## HIRAM COOMBS ET AL.
### v.
## ELISHA B. STEERE.

1. SALE FOR TAXES—WHEN SALE COMPLETED.—In the sale of lands for taxes, the contract of sale is complete when the land is struck off to the highest bidder; and if the purchaser is ready to make the payment when demanded by the collector, the mere fact that because of the large number of sales the clerk was unable for a few days to make the required certificate of purchase and receive payment of the money, gives the owner of the land no right to come in after the sale and before payment of the money, and by tender of the amount of taxes and costs, demand a tax receipt.

2. SALE DEFINED.—"Sale" is a word of precise legal import in law and equity. It means, at all times, a contract between parties to pass rights of property for money, which the buyer pays, or promises to pay, to the seller for the thing bought or sold.

APPEAL from the Circuit Court of McLean county; the

Hon. Owen T. Reeves, Judge, presiding.    Opinion filed January 18, 1881.

Messrs. Williams, Burr & Capen, for appellant; that a court of chancery has no jurisdiction in this case, cited Madison Co. v. Smith, 95 Ill. 328.

Tax sales are construed for the benefit of the purchaser, as liberally as other judicial sales.   Owners of property are bound to contribute their proportion to the public burdens, and cannot escape through technicalities: Beers v. The People, 83 Ill. 488; The People v. Otis, 74 Ill. 384; Revenue Act of 1873, § 191.

A tax sale is a judicial sale and should receive all reasonable intendments to sustain it: Cooley on Taxation, 362.

The sale is complete when the land is struck off to the purchaser, providing there is no default on his part: McCready v. Sexton, 29 Ia. 356; Henderson v. Oliver, 32 Ia. 512; Clark v. Thompson, 37 Ia. 536; Blight v. Banks, 6 Mass. 192.

When a party has done all he could to comply with the law, he will be protected.   He is not to be prejudiced by default of others : Henkel v. Heyman, 91 Ill. 97.

The collector could have been compelled by mandamus to issue a certificate of purchase : McCready v. Sexton, 29 Ia. 356; Maxey v. Claybaugh, 1 Gilm. 26; The People v. Mayer, 10 Wend. 395; White v. Winnie, 19 Wis. 304; State v. Banker, 4 Kan. 114; Curley on Taxation, 522.

Mr. Benjamin D. Lucas, for appellee; that a Court of Chancery has jurisdiction, cited Farwell v. Harding, 86 Ill. 33; Phelps v. Harding, 87 Ill. 442.

Upon the right of the land-owner to avoid the sale: Rev. Stat. 880, 901, 904.

McCulloch, P. J.   This was a bill in chancery brought by appellee against appellants, to set aside and cancel certain certificates of purchase issued to appellant Coombs upon a sale of appellee's lands for taxes.   The fact appears to be that in anticipation of his becoming a purchaser at the sale of lands for be-

Coombs v. Steere.

coming a purchaser at the sale of lands for delinquent taxes, in the month of June, A. D. 1880, and before the commencement of said sale, said Coombs deposited with the collector $1,000 to apply upon any purchases he might make; that he stated he was anxious to get his certificates of purchase as soon as possible, but was told that no certificates could be issued until after the sale was completed; that he proceeded to make sundry purchases, and before bidding off the lands in question, had purchased more than sufficient to exhaust the sum so deposited; that he continued to bid off other lands, but made no further deposit, nor did he pay for the same as bid off, but was ready to do so whenever the clerk should make out his certificates, and did pay for all the land bid off by him upon receipt of his certificates.     Appellee's lands were offered for sale on the 12th day of June, and were bid off by appellant, Coombs, for the amount of taxes, interest and costs due thereon, and immediately the clerk entered upon the judgment record and upon the delinquent book the words "H. Coombs" opposite each of said lots, in blank columns provided for the purpose of designating the name of the purchaser, and also figures denoting the day of the sale.     Two days afterwards, and before the conclusion of the sale, and before any certificates had been issued to Coombs for appellee's lands, appellee tendered to the collector the amount of said taxes, interest and costs, in payment thereof, and demanded a tax receipt, but the collector refused either to receive the money or to issue a tax receipt, alleging as his reason therefor that the lands had been sold to appellant Coombs.     There were from fifteen hundred to two thousand tracts sold in all, and the clerk testifies it was impossible to make out the certificates as the sale progressed. Appellant Coombs was anxious to get the certificates as soon as possible, and urged the clerk by correspondence and otherwise, to issue them.     This bill is brought to set aside these certificates on the ground that appellee had tendered the taxes, interest and costs before the sale was completed, and that the issuing of the certificates thereafter was unauthorized and void, and so the court below decreed.     To reverse this decree the cause is brought to this court by appeal.

In support of the decree counsel for appellee refer to sections 189 and 206 of the Revenue Law of 1879, by the first of which it is provided that the owner may pay the taxes, interest and costs at any time before sale, and by the latter that the purchaser shall forthwith pay to the collector the amount charged in such tract or lot, and on failure to do so the said tract or lot shall be again offered for sale in the same manner as if no such sale had been made, and in no case shall the sale be closed until payment is made or the tract or lot again offered for sale.

Under these provisions it is claimed that even after the lands had been struck off to Coombs, appellee, at any time before Coombs had paid for them, had a right to tender the money and so defeat the sale. We do not so understand the law. There is no claim made that the sale was in any other particular irregular, or that if Coombs had paid his money and obtained his certificate before appellee tendered payment, any reason would have existed for setting it aside. The only question for our consideration, therefore, is whether or not, within the meaning of the sections of the statute referred to, appellee had tendered payment of the taxes, interest and costs *at any time before sale.*"

It is conceded that great strictness is required in all proceedings anterior to the offering of the land for sale, and the owner must be given all the time the law allows for making payment. In Early v. Doe, 16 Howard, 610, it is said "he may arrest the uplifted hammer of the auctioneer when the cry for sale is made, if it be done before a *bona fide* bid has been made." But when the property has been offered at public sale, and when bids have been made and the land struck off to the highest bidder, the sale, under ordinary circumstances, is closed. The bid has been accepted, the minds of the contracting parties have come together by an offer of a certain price on one side and the acceptance of the offer on the other.

" Sale is a word of precise legal import in law and in equity. It means at all times, a contract between parties to pass rights of property for money which the buyer pays or promises to pay to the seller for the thing bought and sold." Williamson

v. Berry, 8 How. 544 ;  Bigley v. Risher, 63 Penn. St. R. 152. These conditions are fully met in the case of an auction sale as soon as the bid is accepted and the property struck off. Hilliard on Sales, 249.   It certainly never was the intention of the legislature to permit the owner of property to stand by and see it offered for sale and struck off to a purchaser, and then to defeat the sale by a payment of the taxes, interest and costs before the purchaser had had an opportunity to complete his purchase by paying the money and receiving his certificate of purchase.

It is true the collector may not sell on a credit, but he must have a reasonable time in which to transact the business of offering the lands for sale, receiving the money and making out the certificates, and where the purchaser himself is not in default, he ought not to be prejudiced in his purchase by the delay of the collector.   Blackwell on Tax Titles, 279; Henkle v. Heyman, 91 Ill. 97.   Should the purchaser fail to comply with the terms of his bid, the statute authorizes the collector to again offer the lands for sale.   He must be ready at all times to make payment when required to do so by the collector if he would avoid the forfeiture of his purchase.   But this provision of the statute, we doubt not, was inserted for the purpose of securing *bona fide* bidders and for the protection of the revenue, and not in any manner for the benefit of the owner of the land. So long as the purchaser is ready to pay it rests wholly with the collector when he will accept payment, and with the exercise of his discretion in this regard the owner of the land has nothing whatever to do, as he cannot be injuriously affected by it.   This is one of those directory provisions of the statute which in no wise concern the owner of the land, as to whom the sale is complete upon the land's being struck off, if followed by payment when required by the collector.   Should the collector again offer the lands for sale for the default of the purchaser in making payment, then it is possible the owner might arrest the second sale by tendering the taxes, interest and costs, but so long as the collector elects to treat the first sale as subsisting, we are unable to see how the owner can come in and interfere with the exercise of such a discretion.   Cooley

on Taxation, 213–20. We are therefore of the opinion that appellee has no equities in this case, and for this reason the decree of the circuit court is reversed, and the bill dismissed.

Decree reversed and bill dismissed.