(No. 43046.—

GERALDINE D. HOFFMANN, Appellant, *vs.* HELEN E. STUCKSLAGER *et al.*, Appellees.

*Opinion filed March 16, 1971.—Rehearing denied May 26, 1971.*

BLAIR & BUYER, of Chicago, (ALLAN L. BLAIR and BRUCE M. BUYER, of counsel,) for appellant.

RALPH G. SCHEU, of Chicago, for appellees.

EDWARD V. HANRAHAN, State's Attorney, of Chicago, (DANIEL P. COMAN, Chief of the Civil Division, and FRANCES G. SOWA and THOMAS E. BRANNIGAN, Assistant State's Attorneys, of counsel,) for *amicus curiae* EDMUND J. KUCHARSKI.

WILLIAM R. KETCHAM, State's Attorney, of Geneva, for *amicus curiae* FERN V. CONNER.

JACK HOOGASIAN, State's Attorney, of Waukegan, for *amicus curiae* RAYMOND J. SHEAHEN.

ROBERT S. CUSHMAN and MAURICE W. SCOTT, both of Chicago, for *amicus curiae,* TAXPAYERS FEDERATION OF ILLINOIS.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

A judgment of the circuit court of Cook County which ordered the county clerk of that county to issue a tax deed to Geraldine D. Hoffmann was reversed by the appellate court (121 Ill. App. 2d. 129), and we granted leave to appeal.

On January 17, 1964, the circuit court of Cook County entered judgment and order of sale against real estate owned in fee simple by Helen E. Stuckslager for nonpayment of 1962 general real-estate taxes. On January 30, 1964, the delinquent real estate was offered for sale at the annual tax sale. The property was struck off to Interstate Bond Company, the successful bidder, and the sale was noted in the Tax Warrant Books and the Tax Judgment, Sale, Redemption and Forfeiture Record. A certificate of sale was issued to Interstate indicating an advertised purchase price of $1,013.71. A total of 606 parcels was sold by the county collector on January 30. Interstate did not make payment on that date for this or any of the other 103 purchases it made on that date. On February 7, 1964, the county collector advised Interstate by telephone that the total amount due on its 104 purchases, including interest, penalties, and costs to date of sale, was $60,519.59, and on the same day Interstate delivered a check in that amount to the collector's office.

The period of redemption was extended by Interstate under section 263 of the Revenue Act (Ill. Rev. Stat. 1965,

ch. 120, par. 744) from January 30, 1966, to November 30, 1966, and the certificate of sale was assigned to Geraldine D. Hoffmann (hereafter petitioner). Her petition for a tax deed was allowed, after evidence was heard, over the objections of Helen E. Stuckslager and Walter Stuckslager, her husband. As has been stated, the appellate court reversed, and we granted leave to appeal.

The ground upon which the appellate court reversed is that the purported sale was null and void because Interstate failed to pay the advertised amount "forthwith in cash" as required by section 247 of the Revenue Act of 1939. (Ill. Rev. Stat. 1963, ch. 120, par. 728.) The correctness of that determination is the only issue before us. Section 247 provides: "The person purchasing any tract or lot, or any part thereof, shall forthwith pay to the collector the amount charged on such tract or lot, and on failure so to do, the tract or lot shall be again offered for sale in the same manner as if no such sale had been made; and in no case shall the sale be closed until payment is made, or the tract or lot again offered for sale. Provided, in counties having a population of 500,000 or more, as shown by the last United States census, only the taxes, special assessments, interest and costs as advertised in the sale shall be required to be paid forthwith in cash. The general taxes charged on the land remaining due and unpaid, not included in the advertisement, shall be paid by the purchaser within 10 days after the sale, provided, that upon payment of the fee provided by law to the County Clerk (which fee shall be deemed part of the costs of sale) the purchaser may make written application within such period of 10 days to the county clerk for a statement of all such taxes, interest and costs and an estimate of the cost of redemption of all forfeited general taxes, as are not included in the advertisement and after obtaining such statement and estimate and an order on the county collector to receive the amount of forfeited general taxes, if any, the purchaser shall pay to the county collector

all such remaining taxes, interest and costs, and the amount necessary to redeem the forfeited general taxes, who shall issue the purchaser a receipt therefor. Any delay in providing the statement or in accepting payment, and delivering receipt therefor, shall not be counted as a part of the 10 days. When the receipt of the collector is issued a copy shall be filed with the county clerk and the county clerk shall include the amount shown in such receipt in the amount of the purchase price of such land in the certificate of purchase, and thereupon the purchaser shall be entitled to a certificate of purchase. If a purchaser fails to complete his purchase as herein provided, the purchase shall become void, and be of no effect, but the collector shall not refund the amount paid in cash at the time of the sale, except in cases of sale in error. Such amount shall be treated as a payment and distributed to the taxing bodies as other collections are distributed."

The appellate court held that these provisions "clearly constitute a statutory framework and schedule that contemplate first an advertisement of the sale which includes the total amount 'charged', the payment of that amount by the purchaser at the time of sale, and in default thereof further sale, and thereafter a computation of the general taxes and charges on the land remaining due and unpaid and not included in the advertisement, and the payment of that amount by the purchaser within 10 days of the sale." (121 Ill. App. 2d at 133.) And because Interstate did not pay the advertised amount of $1,063.71 until eight days after the property was sold, the appellate court held that the sale was void.

In their attack upon the judgment and opinion of the appellate court, the tax buyer and the *amici curiae* emphasize the testimony of an employee in the office of the county collector that a number of days is required for the collector to compute interest due to the date of sale, to check for possible errors, and to recap the total purchases of an indi-

vidual tax buyer. It is pointed out that "in the opinion of the Collector's supervisory personnel, the procedure employed by the Cook County Collector is the safest and most accurate procedure that the collector has been able to devise."

They also charge that the opinion of the appellate court incorrectly interpreted section 247, leads to "absurd and dangerous results," conflicts with decisions of this and other courts, and is clearly contrary to well-established principles of general law. Heavy reliance is placed upon the earlier decision of the appellate court in *Coombs* v. *Steere* (1880), 8 Ill. App. 147. There the owner of the tax delinquent property had sought to redeem two days after the property had been sold, but before the county collector had accepted payment from the tax buyer and issued the certificate of sale. The court said: "It is true the collector may not sell on a credit, but he must have a reasonable time in which to transact the business of offering the lands for sale, receiving the money and making out the certificates, and where the purchaser himself is not in default, he ought not to be prejudiced in his purchase by the delay of the collector. * * * He must be ready at all times to make payment when required to do so by the collector if he would avoid the forfeiture of his purchase. But this provision of the statute, we doubt not, was inserted for the purpose of securing *bona fide* bidders and for the protection of the revenue, and not in any manner for the benefit of the owner of the land. So long as the purchaser is ready to pay it rests wholly with the collector when he will accept payment, and with the exercise of his discretion in this regard the owner of the land has nothing whatever to do, as he cannot be injuriously affected by it. This is one of those directory provisions of the statute which is no wise concern the owner of the land, as to whom the sale is complete upon the land's being struck off, if followed by payment when required by the collector." 8 Ill. App. at 151.

To the extent that the *Coombs* case is relied upon to

establish the meaning of that portion of the present section 247, which relates to tax sales in counties of more than 500,000 population, the reliance is misplaced. Only the first sentence of the present section 247 was in effect when that case was decided. The present provisions governing sales in such counties were added later, and they clearly contemplate, as the appellate court held, that in such counties there should be two payments; first, a payment "forthwith in cash" of the amount of "taxes, interest and costs as advertised," and thereafter payment of other amounts due. The subsequent reference to "the amount paid in cash at the time of sale" makes the meaning unmistakable. The amount of "taxes, interest and costs as advertised" is known at the time of the sale, and no delay for computation of that amount is required.

To the extent, however, that the *Coombs* case held that a tax sale is not invalidated by the failure of a collector to comply with the literal requirements of the statute with respect to the time when he accepts payment, we think that it reached the correct result. So far as an owner of delinquent property is concerned, it is sufficient to conclude, as did the court in the *Coombs* case, that the provisions for payment are directory and do not afford a basis for an attack upon the validity of the sale.

The judgment of the appellate court is therefore reversed, and that of the circuit court affirmed.

*Appellate Court reversed;*
*circuit court affirmed.*