KIVIE SCHWARTZ *et al.*, d/b/a THORNTON, LTD., Plaintiffs-Appellants, *v.* CITY OF CHICAGO *et al.*, Defendants-Appellees.

(No. 57166;

First District (3rd Division)—July 3, 1974.

Block, Erdos & Lupel, of Chicago, for appellants.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Robert R. Retke, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The plaintiffs, co-partners doing business as Thornton, Ltd., brought suit against the City of Chicago charging negligent failure to notify them of a demolition suit affecting certain real estate for which Thornton held a tax-sale certificate. They appeal from the order entered in favor of the City at the close of their case.

Thornton contends that: (1) the City owed a statutorily-imposed duty to name it a party to the demolition suit; (2) as certificate holder, it possessed vested rights either to reimbursement of the tax sale price plus penalty interest or to a tax deed on expiration of the redemption period and that the City's breach of duty entitled it to damages for loss of its anticipated gain; and (3) the petition it filed to vacate the tax sale in exchange for a refund of its purchase price represented only an effort to mitigate damages. The City responds that its failure after diligent search to make Thornton a party to the suit did not render it liable to the certificate holder, and that Thornton's refund for and cancellation of the tax certificate of purchase released all its claims.

Thornton purchased the certificate for $6,184.94 on October 31, 1966, at a sale for the delinquent general taxes on a 12-apartment building situated on two lots. At the time of the purchase a partner in Thornton estimated the value of the property to be $30,000, based on capitalization of the income stream, with allowance made for $4,800 to $5,800 for the repairs which he estimated were necessary to bring the building into compliance with the municipal housing code.

Four months after the sale, on March 3, 1967, the City instituted a demolition suit against the same property. In August 1967, on motion of the City, a receiver was appointed for the limited purpose of seeing whether the building could be brought into compliance with the housing code. Orders were subsequently entered to vacate the premises and to repair them. When the owners of record did not comply with the latter order, a decree was entered in June 17, 1968, directing the elimination of the alleged public menace. The building was demolished some time between October 17 and November 23, 1968.

Thornton claims not to have learned of these events until after the

demolition had taken place. The evidence, however, contradicts this assertion. Through its partner Stanford Marks, Thornton admitted at the trial that it failed to inspect the premises from the time of the tax sale in October 1966 until shortly after the receipt in August 1968 of a report of title listing the City's demolition suit. Thornton had requested the report preliminary to preparing a petition for a tax deed on the property. When Marks viewed the building in late August or early September 1968 he found it abandoned and extensively vandalized. Judging the building incapable of economic restoration, Thornton decided not to petition for a tax deed. Instead, it filed this action, charging the City with negligent failure to serve notice of the demolition suit, as required by section 253a of the Revenue Act of 1939 (Ill. Rev. Stat., 1965, ch. 120, par. 734a), and seeking damages measured by either the difference between the market value of the property at the time the tax certificate was purchased and after the improvement was razed or, alternatively, the amount which a redeeming titleholder would have been charged in October 1968. It also petitioned for and was granted a vacation of the original tax sale, receiving a refund of the sale price in exchange for the surrender and cancellation of the certificate.

■■ In order to evaluate the parties' claims on the matter of liability, it is first necessary to determine whether and to what extent the City had a duty to notify Thornton. That some such duty existed is beyond argument. Section 253a requires that tax certificate holders be named parties to demolition actions affecting property represented by their certificates. In view of this prescription, and keeping in mind general jurisdictional tenets, it would seem that unless a certificate holder was in privity with one of the parties actually notified in a demolition action, failure to notify that holder of the action would make any decree against him void. Section 253a, however, must be read in conjunction with that portion of the revised Cities and Villages Act which governs demolition proceedings, particularly with that part of section 11—31—1 (Ill. Rev. Stat. 1967, ch. 24, par. 11—31—1) which provides:

> "Where, upon diligent search, the identity or whereabouts of the owner or owners of any such building shall not be ascertainable, notice mailed to the person or persons in whose name such real estate was last assessed shall constitute sufficient notice under this section." (Ill. Rev. Stat. 1967, ch. 24, par. 11—31—1.)

Service by publication is considered adequate substitute for the written notice specified in section 11—31—1. *City of Chicago v. Leakas* (1972), 6 Ill.App.3d 20, 284 N.E.2d 449; *City of Chicago v. Logan* (1965), 56 Ill.App.2d 291, 205 N.E.2d 795.

We do not perceive an irreconcilable conflict between the notice pro-

visions of the Revenue Act and the Cities and Villages Act. The one specifies a party necessary to demolition actions, the other describes a proper mode of notifying necessary parties. Laws must be interpreted consistently with one another where possible, and statutes should be construed with other statutes touching the same subject as part of a coherent system of legislation. (*Klemme v. Drainage District No. 5* (1942), 380 Ill. 221, 43 N.E.2d 966.) Reconciliation of the two provisions is supported by comparison of the policies behind the respective legislative schemes. The tax sale provisions of the Revenue Act were drawn with the object of procuring revenue. The various protective provisions of the Revenue Act toward tax purchasers have the object of inducing prudent persons to bid at tax sales. The State has both a general interest in keeping titles free from clouds and a special interest in encouraging persons to provide governmental units with the revenue they would not have received because of tax delinquencies. Ancillary to this is a purpose to keep rental units viable where possible, if legal owners have, as is often the case, abandoned the properties. *City of Chicago v. Logan* (1965), 56 Ill.App. 2d 291, 205 N.E.2d 795.

Against these desiderata must be weighed the interest in the public health, safety and welfare which is served by the relevant portions of the Cities and Villages Act. Section 11—31—1 reflects the pressing need to free the community from menaces to its well-being. In a metropolis the size of Chicago, the authorities are annually confronted with hundreds of hazardous and abandoned properties. The interests of public safety necessitate a more summary kind of procedure and a lesser standard of notice to interested parties, particularly those who make themselves difficult to find. But while the policy behind summary approaches to the demolition of dangerous and unsafe buildings is perhaps more imperative than the interest in protecting tax titles as an inducement to tax purchasing and the production of revenue, it in no way dictates abandonment of the latter aim.

Tax purchasers are far from helpless if they wish to supervise their investments during the interim between a tax sale and expiration of the redemption period. In addition to that portion upon which Thornton relies, section 253a further provides:

> "After any sale of real property for failure to pay taxes upon such property and until a tax deed has been issued or until redemption has been made, no waste shall be committed on any of the premises involved. The court in which the order was entered directing such property to be sold to satisfy the taxes, interest, penalties and costs may, upon verified petition of the holder of the certificate of

purchase, take such action as the court deems necessary and desirable to prevent the commission of waste.

\* \* \*

\* \* \* *Nothing herein contained is intended to prevent a court from appointing the holder of the certificate of purchase as receiver.*" (Ill. Rev. Stat. 1965, ch. 120, par. 734a.)

Section 253a does not contemplate a scheme of insurance for tax title investors, but instead guarantees them appropriate legal process by which to help themselves. It is to be noted that Thornton, experienced and knowledgeable in the field of delinquent tax purchases, did not make use of this protective statute. Moreover, according to its own testimony, it did not look at the twelve-apartment building to which it held a tax sale certificate from October 1966 until August or September 1968; and, although it knew in August 1968 that demolition was imminent—the demolition did not take place until some time between October 17 and November 23—it took no action to prevent it.

We must also recognize as a matter of common sense that acceptance of Thornton's contention that the notice provision of section 253a is unqualified and that the City may not interpose the due diligence defense available through section 11—31—1 of the Cities and Villages Act, would force a conclusion that the legislature, by designating tax certificate holders as necessary parties in demolition actions, meant to confer on such persons a higher status vis-a-vis the City than that enjoyed by owners in fee, who remain entitled only to such notice as can be provided after diligent inquiry. To infer such an inverted treatment of the two interests would be untenable, absent a more clearly expressed directive. A clearer expression was indeed forthcoming in the 1969 statutes. However, far from supporting Thornton's theory, the legislature by its revision of section 11—31—1 made explicit the qualification that the City's defense of diligent inquiry is assertable equally against both owners and lienholders of record. Ill. Rev. Stat. 1969, ch. 24, par. 11—31—1.

However, to agree with the City that it owed Thornton only a duty to make diligent inquiry is not to conclude that such inquiry was made. The City asserts that it was; that in its demolition action the persons in whose names taxes had last been assessed, owners of record and unknown owners were named defendants and served by publication after the City filed an affidavit of diligent inquiry for interested persons pursuant to section 14 of the Civil Practice Act (Ill. Rev. Stat. 1965, ch. 110, par. 14). An affidavit of diligent inquiry would be part of the record of a demolition proceeding and it would enumerate the steps taken by the City in its unsuccessful attempt to identify and personally serve the owners of

record. While there may have been such an affidavit there is nothing in the record before us to support the City's assertion. The record of the demolition suit was not made part of the record in this case. Since this action terminated at the close of the plaintiffs' case, the City had no need to present evidence and it made no affirmative showing to counterbalance Thornton's proof that it in fact received no notice of the demolition suit. A diligent inquiry would have included a search of public records and a thorough search might have disclosed Thornton's interest, for the law provides that the county collector shall prepare a judgment, sale, redemption and forfeiture record and that the record shall be kept in the office of the county clerk. Ill. Rev. Stat. 1967, ch. 120, par. 713.

The City points out that Thornton did not allege lack of diligent inquiry in its complaint, but the City does not suggest what conclusion should be drawn from this omission. It certainly would not vitiate the allegation of negligence; moreover, since diligent inquiry is in the nature of an affirmative defense, it does not fall to the plaintiff to allege its absence.

The City claims, next, that its failure to discover Thornton's interest does not in itself indicate a lack of diligent inquiry. By this it seems to propose that in proceedings leading to a decree of demolition there exists a presumption of regularity and that as a matter of law this presumption is not rebutted by evidence showing that a party in interest was not served. Again, the proposition arises from a misperception of the affirmative nature of the defense of diligent inquiry, and the cases cited fall short of establishing the point. *People v. O'Keefe* (1960), 18 Ill.2d 386, 164 N.E.2d 5, and *Village of Dolton v. First National Bank* (1957), 12 Ill.2d 435, 147 N.E.2d 62, both concerned the notice which tax certificate holders must provide to owners of record at the expiration of their redemption period in order to qualify the certificate holders to receive their tax deeds. (Ill. Rev. Stat. 1967, ch. 120, par. 744.) On the other hand, *City of Chicago v. General Realty Corp.* (1971), 133 Ill. App.2d 662, 273 N.E.2d 712, and *City of Chicago v. Logan* (1965), 56 Ill.App.2d 291, 205 N.E.2d 795, did concern demolition suits. Decrees were entered although interested parties had not been notified of the proceedings. In both cases the courts found that the City had made diligent inquiry within the meaning of the statute and was therefore free of blame for its failure to locate the proper parties in accordance with section 11—31—1 of the Cities and Villages Act. In *General Realty* there was proof that the City's title search had been conducted prior to the defendants' recordation of their interest in the property, and the reviewing court further determined from the record that the defendants were not prejudiced by lack of personal service, since they had appeared in

court before the appointment of a receiver and the entry of the demolition decree. In *Logan,* an action to vacate a demolition decree, service by publication was held adequate notice, but the reviewing court, aided by the decree and the record of proceedings from the court which ordered demolition, based its decision on the circumstances of that case. As we have mentioned, in this case the record of the demolition suit is not before us, and an appellate court will not take judicial notice of a record in another court unless it is incorporated in the proceeding before it. *Neumann v. Ellars* (1966), 75 Ill.App.2d 394, 221 N.E.2d 85.

██ If the City did indeed make diligent inquiry, that would be a matter easily proved by evidence within the City's control which, since this case will be remanded, we would expect to be adduced at the next trial. Inasmuch as our order will be one of remandment, a further word is due on the treatment to be accorded an affidavit of diligence, should it be produced. Such an affidavit does not foreclose further inquiry. Courts will, if necessary, look behind the document's allegations and if they do not speak the whole truth, jurisdiction will not obtain. (*City of Chicago v. Moran* (1974), 17 Ill.App.3d 515, 308 N.E.2d 324; *City of Chicago v. Leakas* (1972), 6 Ill.App.3d 20, 284 N.E.2d 449.) In *Leakas* the evidence showed that the City's process server had not made a serious, well-directed effort to locate a building owner; as a result the demolition decree was voided, notwithstanding the presence of an affidavit of due inquiry. Similarly, mere proof that the City filed such an affidavit in the March 1967 demolition proceeding would not conclude the issue of negligence.

The City next asserts that Thornton is not entitled to relief because of its own failure to intervene in the demolition action upon receipt of the report of title which disclosed that the property had been condemned and upon its own inspection which revealed the building was still standing. The City cites *Shippert v. Shippert* (1939), 371 Ill. 267, 20 N.E.2d 597, but that case affords a poor analogy to the present one. *Shippert* pertained to a petition to set aside a decree partitioning certain lands. The decree was denied, because while the complaining party had not been served the required notice of the filing of a counterclaim, he had already appeared in court prior to its lodging and then apparently abandoned the proceeding. Thornton, on the contrary, did not receive actual notice until after the entry of the demolition order.

Furthermore, Thornton's evidence was that when it finally received notice, the property had fallen into such a state of disrepair that its rehabilitation had become uneconomical. True, a Thornton partner acknowledged in his testimony that at the time of purchase the building was in substantial disrepair; and Thornton then ignored it for nearly 2

years, reappearing at the building only when the period of redemption had virtually expired. Although Thornton's failure to make periodic inspections of the property and its failure to avail itself of the remedy provided by statute to have a receiver appointed may have contributed to its alleged loss and may be evidence of its own negligence, whether this neglect can be said to absolve the City is another matter. When a person who has an interest in property knowingly stands by and suffers it to be disposed of under a decree without making known his claim, he may not later raise the claim. (*Moore v. Gilmer* (1933), 353 Ill. 420, 187 N.E. 466.) But Thornton did not actually or constructively learn of the demolition proceeding until two months after the decree was entered and long after the property had been evacuated by court order. The lack of notice 19 months earlier may have contributed to Thornton's failure to preserve the property when it would, possibly, have been economically more feasible to do so.

The City also argues that even if it were to concede its negligence, Thornton would be bound by the remedy it elected when it petitioned for and received a refund of the tax sale purchase price in return for the cancellation of the sale certificate; that it surrendered all claims arising from its status as a certificate holder when it surrendered the certificate itself. Thornton replies that it only sought to fulfill its duty to mitigate damages which were far in excess of the refunded purchase price.

In assessing these contentions, it is first necessary to understand the nature of the rights conferred on tax purchasers by the Revenue Act. The City relies on section 262 of the Act, which states:

> "* * * the return of the certificate of purchase * * * for cancellation, shall operate as a release of all the claim to such tract or lot under, or by virtue of the purchase * * *." (Ill. Rev. Stat. 1969, ch. 120, par. 743.)

It is Thornton's position that it was entitled to additional damages because it already possessed a vested right to reimbursement of the purchase price plus penalty payment from the delinquent titleholder or, in the alternative, a vested right to a tax deed upon the expiration of the redemption period. To support its assertion of vested rights Thornton relies on *City of Chicago v. City Realty Exchange, Inc.* (1970), 127 Ill.App.2d 185, 190, 262 N.E.2d 230, where it is stated:

> "One of the interests a tax purchaser acquires through his certificate of purchase is the right to be paid the price of the sale, interest, costs and any other taxes paid, if there is redemption."

If no redemption is made, then the certificate holder has the right to petition for a tax deed. Ill. Rev. Stat. 1965, ch. 120, par. 747.

■■ Under the statutory scheme as it existed prior to 1969, sales in

error were declared only for the four reasons specified in section 260 of the Revenue Act, none of which were remotely connected to demolition of the premises. (Ill. Rev. Stat. 1967, ch. 120, par. 741.) In 1969, however, the legislature enacted section 271.1 which provided that a sale would be set aside as error if a tax purchaser did not reimburse a city for advancements it may have made from the public treasury because of its interest in the land under its police and welfare powers. (Ill. Rev. Stat. 1969, ch. 120, par. 752.1.) And in 1970, section 260 of the Act was amended and its scope expanded by the addition of another reason for declaring a sale in error:

> "[U]pon application of the tax purchaser that the improvements upon property sold have been substantially destroyed subsequent to the tax sale and prior to the issuance of the tax deed, the county clerk or the court which ordered the property sold shall declare such sale to be a sale in error * * *." Ill. Rev. Stat. 1971, ch. 120, par. 741.

This amendment, which became effective after Thornton received its refund and cancellation, provides only a statutory form of relief. But this is not to say that by the 1970 amendment the legislature intended to provide an exclusive remedy. The prevailing principle is that the common law remains the law of Illinois unless it is expressly revoked by statute. (*Waesch v. Elgin, J. & E. Ry. Co.* (1962), 38 Ill.App.2d 56, 186 N.E.2d 369.) A party injured by a municipality's negligence still retains any right to compensation for the value of its loss which it can prove in tort, unless it has abandoned both sets of rights—statutory and common law—by surrendering its tax certificate. This, Thornton did not do; rather, only its status as certificate holder terminated. Thus, Thornton has no further capacity to take a deed to the land, and no claim on the owners for penalty payments and redemption. (Ill. Rev. Stat. 1967, ch. 120, par. 743.) But it has not abandoned its common-law right to compensation for the alleged negligent act which it claims undercut the investment value of its purchase. The narrow question has not been adjudicated in this jurisdiction but the result in another state is instructive. In *Hepner v. Township Committee of Lawrence Twp.* (1971), 115 N.J.Super. 155, 278 A.2d 513, the court ruled that common-law right to recovery were retained notwithstanding an express provision within the act governing demolitions that the injunctive remedy there set forth would be the exclusive means to obtain relief under the statute. That result seems consistent with the principle of *Waesch.* Also, the provision here relied upon by the City does not go as far as the New Jersey statute. It contains no express declaration of exclusivity, nor can one fairly be implied. Where a new remedy is granted by statute and there are no negative

words or other provisions rendering it exclusive, it will be deemed to be cumulative only and not to take away prior remedies. (*Kosicki v. S. A. Healy Co.* (1942), 380 Ill. 298, 44 N.E.2d 27.) The doctrine of election among cumulative remedies does not apply when multiple avenues of remedy are pursued, as long as double compensation of the plaintiff is not threatened, the defendant has not actually been misled by the plaintiff's conduct, and res adjudicata principles cannot be applied to bar an inconsistent theory. (*Faber, Coe & Gregg, Inc. v. First National Bank* (1969), 107 Ill.App.2d 204, 246 N.E.2d 96.) None of those feared consequences are manifested here.

If it is conceded that Thornton did not surrender the common-law right to recover, it becomes necessary for it to prove that its injury was inflicted by the City's negligence. Thornton claims that the City's liability was established at the trial and that the request remand should only be for the purpose of entering judgment for the damages it sustained. We think, however, that in the interest of justice the cause should be remanded for a new trial on all issues, and under the authority that is ours, that will be our order. Ill. Const., art. VI, sec. 6; Ill. Rev. Stat. 1973, ch. 110A, par. 366(a).

Thornton's complaint sounded in tort. In a negligence action the plaintiff must establish a duty owed by the defendant, a negligent act or omission by the defendant which breaches that duty and a compensable injury to the plaintiff resulting from such breach. Liability includes both negligence and injury. To warrant an assessment of liability, affirmative and positive proof is required that the actionable negligence was the proximate cause of the injury. (*Apato v. Be Mac Transport Co.* (1972), 7 Ill. App.3d 1099, 288 N.E.2d 683.) At the next trial the trier of fact must determine questions of liability such as the City's negligence, Thornton's negligence and the proximate cause of Thornton's loss. Its loss was caused by the deterioration of the investment value of the building. Whether the failure of the City to notify Thornton was the proximate cause of the loss is an arguable question. At best, notifying Thornton could only have resulted in its appearing in the case and asking to have itself appointed receiver to preserve or rehabilitate the property. This, it could have done at any time, notice or no notice. It may be found that it was not the City's negligence but Thornton's voluntary decision not to exercise its rights under section 253a of the Revenue Act of 1939 that undercut the value of its investment in the building.

If the liability issues are found in Thornton's favor, then it will become necessary to ascertain the compensable extent of its damage. Thornton thinks it should be $23,818.06. It arrives at this figure by subtracting $6,181.94 (the sum it was refunded when it surrendered the tax certifi-

cate) from $30,000.00 (its own estimated value of the property at the time it purchased the certificate). The City thinks that Thornton by its acceptance of the refund has been fully compensated.

■■   As a general rule, the measure of damages in actions for injuries to real property is the difference in market value before and after injury to the premises. (*Donk Bros. Coal & Coke Co. v. Novero* (1907), 135 Ill. App. 633.) It would seem reasonable for a fee simple owner of property to claim compensation for the full value of the improvements demolished. But Thornton owned something less than a fee interest. Under the terms of the statute, Thornton purchased real property, but the tax certificate representing its purchase gave it no right to possession of the land or title thereto until after the expiration of the period of redemption. (*Wells v. Glos* (1917), 277 Ill. 516, 115 N.E. 658.) While Thornton claims a total loss of the value it placed on the property, whatever loss it suffered occurred during the redemption period, when it had neither title to the land nor the right to its use. In reality, it seeks compensation for the hypothetical profits it would have made if the building had not deteriorated and if no redemption were made and if it had complied with the other conditions of law entitling it to a tax deed.

Lost profits as an element of damage must be the necessary and natural consequence of the injurious act. They are compensable only so far as they are plainly traceable to it, and may not be recovered when they are merely probable and speculative. (*Bimba Mfg. Co. v. Starz Cylinder Co.* (1969), 119 Ill.App.2d 251, 256 N.E.2d 357; *Illinois & St. L. R.R. & Coal Co. v. Decker* (1878), 3 Ill.App. 135.) The record shows only Thornton's assertion that the property had a $30,000 value in 1966, based on the capitalization of the rent. In reaching this figure Thornton allowed for approximately $5,000 in repairs it believed necessary to bring the building into conformity with the housing code. But it stretches credulity to consider that the building could reasonably have been expected to remain in a static condition for the ensuing 2-year period of redemption. There was testimony by Thornton's representatives that when they purchased the tax certificate they could not locate the owners of record, and knew that the building already was in substantial violation of the municipal housing code. Hence for Thornton to rely on continuation of the same income as then received, and to anticipate no further deterioration in the premises, seems wholly unwarranted. This inference becomes inescapable when it is recalled that condemnation proceedings were launched only four months after the tax sale.

There is a strict policy in Illinois not to order demolition of buildings unless the structure is substantially beyond repair, and courts granting demolition decrees are required to specify the defects which render the

building dangerous and unsafe. (*City of Aurora v. Meyer* (1967), 38 Ill.2d 131, 230 N.E.2d 200.) Moreover, making every reasonable concession to the reliability of Thornton's estimate of value, it nevertheless appears inevitable that the property was destined to further deteriorate during the 2-year redemption period, even if the City had never disturbed the status quo with its demolition suit. Indeed, had the City not brought that suit it seems likely that abandonment and vandalization would still have been the early fate of the building. Therefore, we must conclude that Thornton's estimation of the building's value in 1966 was an improper and wholly speculative source by which to measure any damage which proximately and naturally flowed from the City's failure to notify Thornton of the demolition suit. The estimate did not include the impairment which reasonably could be expected to occur during the redemption period; and since deterioration was a virtual certainty Thornton has not shown that its not receiving notice of the City's suit was the only, or even a major cause of that deterioration which did eventuate subsequent to the filing of the suit.

When a defendant moves pursuant to section 64(5) for a finding in its favor at the close of plaintiff's case, the motion is a procedural means of submitting the whole case to the court for a determination of the merits. In ruling on the motion the court is required to weigh the evidence offered by the plaintiff. (Ill. Rev. Stat. 1969, ch. 110, par. 64(5).) The standard to be employed when reviewing the propriety of a trial court's ruling on the motion is whether it was manifestly erroneous. (*Bilyeu v. Plant* (1966), 75 Ill.App.2d 109, 220 N.E.2d 513.) By granting the City's motion the court effectively decided that, conceding negligence on the part of the City, Thornton had nevertheless failed to affirmatively establish any damages not already compensated for by refund of the price paid at the tax sale. This court may not reverse unless Thornton's evidence was clearly contrary to the court's decision.

■■ In order to resolve that issue it is first necessary to ascertain the appropriate measure of damages due a tax sale certificate holder for negligent injury of property covered by the certificate. We have determined that the maximum entitlement of certificate holders to money damages for injury to their investment value occurring during the redemption period must be limited to an amount equal to the price of redemption. "The statute contemplates redemption where the value of the property exceeds the sale price * * * [A]nd when [the purchaser] is repaid all that the statute allows upon redemption, that is all he is either legally or equitably entitled to receive." (*Skach v. Sykora* (1955), 6 Ill.2d 215, 127 N.E.2d 453.) Although a tax buyer is not entitled to redemption from any person except private parties who are eligible to re-

deem (and certainly not from the City), the redemption and penalty payments nevertheless equal the maximum value to him of his certificate, from the time he purchases it until the redemption period expires. As the court reasoned in *Skach*, the real property itself may well have a value greater than the tax sale price plus penalties, but if it does, then it logically can be expected to be redeemed. Until the period of redemption expires, the certificate holder has no claim to any value beyond the redemption price. Until that event occurs, the holder has a mere expectancy of acquiring title and possession of the land. This is the essence of what we mean when we speak of speculative profits.

On remand it will be for the trier of fact to decide, if the City is unable to establish its affirmative defense of diligent inquiry, the negligence issues mentioned in this opinion. If they are decided against the City, then it must be determined whether the City's negligent failure to notify Thornton of the demolition action caused measurable damage to Thornton, beyond the refund of its purchase price, in the amount of all or any part of the redemption penalty payments which would have been due it at the time Thornton received actual notice of the City's suit in August 1968.

Reversed and remanded with directions.

McNAMARA, P. J., and McGLOON, J., concur.