*In re* APPLICATION OF COUNTY COLLECTOR.—(ELMWOOD PROPERTIES, INC., Petitioner-Appellee, *v.* ROSA LEE BULLS *et al.*, Respondents-Appellants.)

(No. 60654; ▮▮▮▮▮▮▮▮▮▮)

First District (5th Division)—July 11, 1975.

*Rehearing denied August 12, 1975.*

. John P. Brundage, of Glenview, for appellants.

Allan L. Blair, of Chicago, for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

This case involves an appeal from an order of the circuit court directing the issuance of a tax deed to the petitioner. Respondents, Rosa Lee Bulls and Clarence Roberts, Jr., appeal contending that the Revenue Act's notice provisions (Ill. Rev. Stat. 1971, ch. 120, pars. 744, 747) were not

complied with as to Roberts, Laighton Scott and Thomas O. Peters, Jr., a trustee of record. Respondents further argue that the petitioner did not comply with the payment of back taxes provision of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 728).

The record indicates that in 1947 Mrs. Bulls became the owner of a two-family residence located at 630 South 12th Avenue, Maywood, Illinois. On March 22, 1971, the property was sold at the annual tax sale to Interstate Bond Company (hereinafter Interstate) for nonpayment of 1969 general real estate taxes. On March 23, 1971, Interstate applied to the county clerk for a back tax search. On March 30 the clerk delivered the search and on April 2, 1971, Interstate paid the taxes shown due on the search. On July 9, 1973, Interstate filed its petition for a tax deed. The period for redemption expired on November 23, 1971, it having been extended pursuant to section 263 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 744). By this date no redemption had been made. On this date also Interstate sold its Certificate of Purchase to petitioner, and the 1970, 1971 and 1972 taxes were paid.

On December 3, 1973, petitioner made application for an order directing the clerk to issue a tax deed and alleged that all notices required by law had been served. Accompanying this document was the affidavit of William F. Rabe stating that Mrs. Bulls and Earline Scott were the occupants of the premises, and that they were personally served. It also stated that Thomas O. Peters, Jr., was an interested party, and that on August 10, 1973, his secretary was served. It further stated that upon diligent inquiry Mr. Peters could not be found in Cook County. On December 19, 1973, Mrs. Bulls filed a motion to dismiss the petition for tax deed alleging failure of notice and failure to comply with section 263 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 744). On January 28, 1973, Mrs. Bulls filed a response to petitioner's petition showing that certain real estate taxes for the years 1951, 1957 and 1958 were then due and unpaid. The court, on January 21, 1974, allowed Roberts to file his appearance instanter and set the hearing for February 7. On February 4 petitioner paid the back taxes due.

At the February 7 hearing the following pertinent evidence was adduced: Mrs. Bulls testified pursuant to section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1973, ch. 110, par. 60.) She lives in the first floor apartment at 630 South 12th Avenue in Maywood. She lives with Roberts and she tells people he is her son. He does not pay rent separately, but they share all the bills. Respondents' counsel then brought out that Roberts is not her son but is a cousin; he has a family consisting of a wife and four children whose ages are 16, 14, 10 and 7; and he has lived there continuously since 1960.

Mr. Meegan then testified as a witness for petitioner. He works for the county clerk's office. He described the circumstances surrounding Interstate's request for a tax search and its payment of back taxes. He also explained how the taxes for 1951, 1957 and 1958 were later found due and were paid. Respondents' attorney was then called as a witness for petitioner and testified that the back-tax bills were never presented to Interstate.

William F. Rabe testified as a witness for petitioner that he is a field agent for Interstate. He inspected the property on August 7, 1973. He made a title search and found who were the parties in interest, including Thomas O. Peters, Jr., as trustee. He served a notice on Mrs. Bulls on August 8, 1973, at 6:55 p.m. She is an occupant and owner of the building on the first floor. When he came into the house through the kitchen, "* * * her son and his wife and children were in the kitchen." He had a conversation with Mrs. Bulls in which he told her about the notice and "asked her who the other occupants of the apartment were and she said that they were relatives, her son and his family * * *." Additionally, he served Thomas O. Peters by leaving a copy of the notice with his secretary, Odell Bach, on August 10, 1973, at 11:05 a.m. He also caused a copy of the notice to be sent to Peters, by certified mail, which was receipted for by the same Mrs. Odell Bach. Rabe then discussed the other service he executed.

He served the occupant of the second floor apartment, a Mrs. Scott, on August 10, 1973, at 1:10 p.m. On cross-examination Rabe explained that the determination as to who is to be served and the diligence in service is made by him. When he spoke with Mrs. Bulls, she was dressed up, as if she was going out or had just arrived home. Mrs. Bulls told him that only a young lady and her son lived upstairs. On August 9, 1973, he saw Mrs. Scott. He never asked her if she was married. He felt that Mrs. Scott was the only person on the second floor he had to serve. At no time did he make any attempt to determine whether or not Mrs. Scott was married and living with her husband. He assumed she was either a widow or divorced or just single.

As for Roberts, Rabe testified that although Roberts was present on both occasions when he visited the house, he never really talked to him. He talked with Mrs. Roberts. Rabe admitted that Roberts looked like he lived there, and that he never served Roberts with a notice.

Mrs. Bulls then took the stand in her own behalf. She repeated that Roberts first moved into the house in the 1960's. At first Roberts paid her rent, now they share the expenses evenly. They also shared the cost of a room addition. The people on the second floor pay rent. There is no written lease with Mr. Scott. There is no written agreement with Roberts.

On cross-examination Mrs. Bulls reiterated that she always refers to Roberts as her son. She lives together with Roberts as a family unit. The reason she didn't redeem was because she didn't have the money.

Laighton Scott testified as a witness for respondents that for about 2 years he has lived at 630 South 12th Avenue, Maywood. He has a wife and six children. He never received any notice. He has an agreement with Mrs. Bulls renting the second floor of the premises for $150 a month. He does not have a lease. His wife didn't remember anything about any notice.

Clarence Roberts, Jr., testified in his own behalf. He lives at 630 South 12th Avenue, Maywood, with his wife, four children and his cousin, Mrs. Bulls. When he first moved into the house in 1961, he paid weekly rent. After 1963 he and Mrs. Bulls divided the bills equally. He never received any notice.

On February 28, 1974, the court ordered the county clerk to issue a tax deed finding that all notices required by law had been given. On April 16, 1974, respondents' motion pursuant to section 68.3 of the Civil Practice Act was denied.

OPINION

Respondents contend that Roberts, allegedly an occupant in possession, was not properly served with notice. Therefore, they argue the court erred in ordering issuance of the tax deed. Petitioner, on the other hand, argues that Roberts and Mrs. Bulls together held themselves out to have a mother-son relationship. It also alleges that Roberts claimed no interest in the premises and concludes it did not have to serve Roberts.

At the time when the statutory notices were to have been served (*In re Application of County Collector*, 12 Ill.App.3d 12, 297 N.E.2d 213), the statutes controlling were sections 263 and 266 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, pars. 744, 747). In pertinent part section 263 reads:

> "A purchaser or assignee *shall* not be entitled to a tax deed to the premises sold unless not less than 3 months nor more than 5 months prior to the expiration of the period of redemption he *shall* give notice of the sale and the date of expiration of the period of redemption to the owners, *occupants* and parties interested in the premises."

* * *

> Such notice *shall* be served by the purchaser or assignee upon all other owners and parties interested in the real estate sold, if upon diligent inquiry they can be found in the county, and *upon*

*the occupants of the real estate* in the following manner: as to individuals, by (1) leaving a copy of the notice with such person personally or (2) by leaving a copy at his usual place of abode with some person of the family, of the age of 10 years and upwards, and informing that person of the contents thereof, provided the purchaser or assignee shall also send a copy of the notice by registered or certified mail, return receipt requested, to such party at his usual place of abode; * * *." (Emphasis added.)

In section 266 it is stated that "[t]he court shall insist on strict compliance with the provisions of Section 263 of this Act; * * *."

In the instant case the court found that all notices as required by law had been given, and this finding will not be reversed unless it is against the manifest weight of the evidence. *People v. Orth*, 21 Ill.2d 205, 171 N.E.2d 626.

■■ "Occupants" is not defined by the statute. When a word is not defined by statute, the courts will assume that the word has its ordinary and popularly understood meaning. (*Farrand Coal Co. v. Halpin*, 10 Ill.2d 507, 140 N.E.2d 698.) An occupant is defined by Webster (New International Dictionary (3d ed. 1966)) as "one who has the actual use or possession of something." Black's Law Dictionary (4th ed. 1968) says an occupant is "one who occupies and takes possession, one who has the actual use, possession or control of a thing." Although an occupant has been given a variety of definitions (see generally 29 Words and Phrases *"Occupant; Occupier,"* 233 (1972)) and has been applied in divers situations (see also Annot., 169 A.L.R. 686, 701-08 (1974)), the determination of whether an individual is an occupant must depend on the particular facts of the case presented.

Both parties have referred to and discussed *First Lien Co. v. Marquette National Bank*, 56 Ill.2d 132, 137, 306 N.E.2d 23. That court responded to the respondents' argument that certain occupants were not served with the required notice, by stating:

> "The occupants are not mentioned as such, nor does it appear that they were represented by counsel. As to one of the two apartments, the contention is based on the failure to serve personally three *minor* daughters who lived with their parents. Service on the daughters was not required, and the proposed interpretation of the constitution and statute is rejected. As to the other apartment, appellees rely on the failure to serve a woman who lived there with her father, and contributed something toward the rent. First Lien Co. proved that notice had been given to her father. *The process server asked the father if he was married, and he replied*

*that he was not. On this record, First Lien Co. had no constitutional or statutory obligation to serve the daughter."* (Emphasis added.)

It should be noted that the above recitation of facts was all that the court discussed. We feel that the record presented in the instant case leads us to conclude that *First Lien*, although not contradictory, is inapposite.

■■ To begin with, Rabe, the process server, knew of the presence of Roberts, his wife and four children. Roberts was in the apartment on both occasions when Rabe came to the house, and Rabe saw him. Rabe was also told by Mrs. Bulls that Roberts was an occupant there. Rabe testified that it looked as if Roberts lived there, but using the discretion his employer gave him, Rabe concededly did not serve Roberts. Further uncontradicted evidence presented at the hearing demonstrated that in the early 1960's Roberts paid a weekly rent; that after 1963, he and Mrs. Bulls had an oral agreement whereby they divided and paid the bills equally. In light of these circumstances, the fact that these persons referred to one another as mother and son does not prevent Roberts from being considered an occupant.

In *Gage v. Lyons*, 138 Ill. 590, 28 N.E. 832, the court cited such factors as (1) being the head of the family; (2) paying rent; and (3) continuous residence on the property, in addition to other considerations for determining occupancy. In light of these elements which we deem present in the instant case, as well as the other circumstances mentioned above, we hold that on the record before us Clarence Roberts, Jr., was an occupant and should have been served. Because of this conclusion we need not consider the other contentions raised by respondents.

Since this case is on direct appeal from a judgment ordering the issuance of a tax deed, and since Mrs. Bulls as well as Roberts squarely put the lack of service on Roberts into issue, it matters not that Mrs. Bulls was herself personally served. (*Bodinger v. Garrison* (1937), 250 App. Div. 463, 294 N.Y.S. 916; Annot., 140 A.L.R. 666, 671 (1942).) The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

LORENZ and SULLIVAN, JJ., concur.