THORNTON, LTD., Plaintiff-Appellant, v. EDWARD J. ROSEWELL, County Treasurer, et al., Defendants-Appellees.

First District (1st Division)    No. 76-1157

Opinion filed July 18, 1977.

Stanford D. Marks, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul B. Biebel, Jr., and Dorothy Kirie Kinnaird, Assistant State's Attorneys, of counsel), for appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Thornton, Ltd., brought an action in mandamus in the circuit court of Cook County seeking a writ compelling defendants, Cook County treasurer and ex-officio collector Edward J. Rosewell and Cook County clerk Stanley T. Kusper, to issue to plaintiff a certificate of purchase to a parcel of real property. Both plaintiff and defendants moved for summary judgment and the court entered judgment in favor of defendants. Plaintiff appeals.

Plaintiff argues that it was entitled to summary judgment as a matter of law upon the stipulated facts, where (1) defendants' answer pleaded only those defenses which had been raised in their motion to strike and dismiss, which had been denied and which defenses therefore had been ruled insufficient as a matter of law, and (2) the defenses are insufficient to overcome plaintiff's right to a certificate of purchase, where plaintiff

purchased the property for taxes in reliance on public records maintained by defendants and had timely paid to defendants all sums due as shown by the records, and defendants have refused to issue the certificate until further sums not shown on the records relied on are paid.

The undisputed facts reveal that plaintiff was the successful bidder at a tax judgment sale held in Cook County on January 22, 1976, for an improved parcel of real estate. Plaintiff timely paid the sum of $15,065.96. Before bidding at the sale, plaintiff had examined the tax judgment, sale, redemption and forfeiture record (hereinafter referred to as the Record) to discover the amount of taxes due and owing against the property it proposed to buy. The Record, required by statute to be maintained by the county collector and kept in the office of the county clerk (Ill. Rev. Stat. 1975, ch. 120, par. 713), showed the taxes for 1972 stamped as "paid" and the taxes for 1973 were not indicated as unpaid. According to the Record, therefore, there were no taxes due and outstanding against the parcel except for the 1974 taxes, which were the subject of the sale. After paying $15,065.96, plaintiff applied to the clerk for a statement of all taxes remaining due and unpaid on the property and not included in the defendants' advertisement offering the property 'for sale, in conformity with the statute (Ill. Rev. Stat. 1975, ch. 120, par. 728). It is uncontroverted that plaintiff reasonably believed that this statement would reveal no additional taxes as due and owing. However, defendant clerk's statement revealed that the Record was in error; that the collector's warrant book revealed that the general taxes for 1972 and 1973 for this parcel had not been paid, amounting to an additional $36,000; and that payment in this amount was required before a certificate of purchase would be issued to the plaintiff.

Plaintiff refused to pay the additional $36,000 and demanded a certificate of purchase be issued to it, tendering the required fee for the certificate. When the demand was rejected and the tender refused by defendant clerk, plaintiff filed this suit for mandamus. Defendants moved to strike and dismiss the complaint, asserting that plaintiff failed to state a cause of action in mandamus because plaintiff had no clear right to the relief requested, that plaintiff came to equity with unclean hands, that the relief requested would not promote substantial justice and that the complaint otherwise did not state a cause of action.

This motion was denied, the court stating in response to defendants' offer to stipulate to certain facts:

> "If you want to offer evidence, I will deny your motion to dismiss, give you 10 days to file an answer and continue the temporary restraining order until further order of Court, and dispose of it on the answer because I can't take evidence on the motion to dismiss."

Defendants filed an answer and raised affirmative defenses which were substantially the same issues and arguments as had been presented in the motion to strike and dismiss. Plaintiff moved to strike the answer and moved for summary judgment. Defendants cross-moved for summary judgment, to which plaintiff responded with a motion to strike.

A hearing on all the above motions was held on June 4, 1976. The court, in first considering the question of defendants raising in answer the same matters which had been raised in their motion to strike and dismiss, stated:

> "Let me tell you this. I want to know—I will straighten out all the pleadings. A judge has control of all of the orders of his case. I want to know under what theory of law you have a right to relief in this case. If I have to straighten out the pleadings in order to do this, * * *."

The court then denied all of plaintiff's motions, including an oral motion to reply or otherwise plead to defendants' affirmative defenses, and entered summary judgment in favor of defendants.

Plaintiff timely moved to vacate the judgment. This motion was denied after argument on July 22, 1976.

■■ Plaintiff argues on the procedural issue that, once the court denied defendants' motion to strike and dismiss, it had determined that plaintiff's allegations, if proven, entitled plaintiff to the relief sought. As a consequence, it is contended, the court erred in allowing defendants to relitigate the same issues through their answer and the court erroneously reversed itself in granting summary judgment to defendants. Plaintiff principally relies on section 48(4) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 48(4)), which provides that the raising of issues by motion to dismiss does not preclude the raising of them subsequently by answer "unless the court has disposed of the motion on its merits." Plaintiff also cites *Randall Dairy Co. v. Pevely Dairy Co.* (1937), 291 Ill. App. 380, 9 N.E.2d 657, and *Citizens National Bank v. Glassbrenner* (1941), 377 Ill. 270, 36 N.E.2d 364, as cases where the rule has been enforced against the pleader. (See also *Hitchcock v. Reynolds* (1935), 278 Ill. App. 559.) But plaintiff has not cited, nor has our research revealed, any reported cases in which an Illinois reviewing court has held it to be error for a trial court to refuse to preclude a defendant from raising an issue, by way of answer, which has already been raised in a motion to dismiss.

■■ We have read the transcript of the hearing on the motion to strike and dismiss and conclude that the motion was not decided on the merits. The court was concerned that the owner of the property had not been served with notice of the proceeding and a discussion of this matter was had. Another point argued at the hearing and decided in plaintiff's favor

was whether a temporary restraining order should issue to defendants to prevent the 10-day period described in section 247 of the Revenue Act of 1939 (Ill. Rev. Stat. 1975, ch. 120, par. 728) from running against plaintiff. The portion of the record quoted above also discloses that the court denied the motion on the procedural ground that it appeared defendants were offering evidence and the court found it inappropriate to hear evidence on a motion to strike and dismiss. Since the issues were not decided on the merits in the motion, section 48(4) permits them to be raised by way of answer and there was no error in the court's consideration of the issues as affirmative defenses.

But even if the court had decided the issues on the merits in the motion to dismiss, it was not erroneous for the court to permit defendants to raise the issues again in their answer. The court was correct when it stated, "A judge has control of all the orders of his case." As the court stated in *Shaw v. Dorris* (1919), 290 Ill. 196, 204, 124 N.E. 796, 800:

> "* * * There can be no question that it is the duty of the court, when it becomes satisfied that an erroneous ruling has been made concerning the sufficiency of a pleading, to set aside such ruling and correct the error. The mere fact that the erroneous order was made on the court's own motion is of no consequence. At any time before the entering of such final judgment the whole record is before the court, and an erroneous ruling theretofore made may be set aside and the error corrected."

(Accord, *Stanko v. Zilien* (1961), 33 Ill. App. 2d 364, 179 N.E.2d 436; *Morck v. Nicosia* (1968), 91 Ill. App. 2d 327, 235 N.E.2d 287.) It was entirely proper for the court to correct its ruling on an issue of law when that issue was presented a second time by defendants and to grant summary judgment for defendants.

■■ Plaintiff argues that it had stated a clear right to the issuance of a writ of mandamus under the facts. We disagree.

"* * * A petition for a writ of mandamus must contain the following: (1) a clear right to have the requested act performed (*People ex rel. Pignatelli v. Ward*, 404 Ill. 240, 243); (2) every material fact necessary to demonstrate the plaintiff's clear right to the writ, (*Anderson v. Board of Education*, 390 Ill. 412, 435); (3) a showing that the requested act is the duty of the defendant to perform (*Anderson*); (4) a showing that the requested act is within the power and authority of the defendant (*People ex rel. Canella v. City of Chicago*, 7 Ill. 2d 416, 418); * * *." (*People ex rel. Endicott v. Huddleston* (1975), 34 Ill. App. 3d 799, 802, 340 N.E.2d 662, 665.) In the case at bar, the trial court found that the plaintiff failed to state a cause of action in mandamus against the defendants because defendants have no duty to deliver a certificate of purchase until plaintiff completes the sale by paying the additional taxes due. While the court

found that plaintiff had a right to rely on the Record in determining whether to bid at the sale, the court ruled nevertheless that mandamus would not lie to compel defendants to issue a certificate of purchase where the Record's error in omitting to reflect the unpaid taxes was discovered during the post-sale search required by the statute. Plaintiff argued that by reason of (1) the statute requiring the Record to be kept by defendants, (2) the presumption that the public record is correct, and (3) its status as a third party to the Record as defined in *Jackson Park Hospital Co. v. Courtney* (1936), 364 Ill. 497, 4 N.E.2d 864, the 1972 and 1973 taxes, as to plaintiff, were paid and it was entitled to the certificate.

Section 247 of the Revenue Act of 1939, as amended (Ill. Rev. Stat. 1975, ch. 120, par. 728), reads as follows:

"The person purchasing any tract or lot, or any part thereof, shall forthwith pay to the collector the amount charged on such tract or lot, and on failure so to do, the tract or lot shall be again offered for sale in the same manner as if no such sale had been made; and in no case shall the sale be closed until payment is made, or the tract or lot again offered for sale. Provided, in counties having a population of 1,000,000 or more, as shown by the last United States census, only the taxes, special assessments, interest and costs as advertised in the sale shall be required to be paid forthwith in cash. *The general taxes charged on the land remaining due and unpaid, not included in the advertisement, shall be paid by the purchaser within 10 days after the sale*, provided, that upon payment of the fee provided by law to the County Clerk (which fee shall be deemed part of the costs of sale) the purchaser may make written application within such period of 10 days to the county clerk for a statement of all such taxes, interest and costs and an estimate of the cost of redemption of all forfeited general taxes, as are not included in the advertisement and after obtaining such statement and estimate and an order on the county collector to receive the amount of forfeited general taxes, if any, the purchaser shall pay to the county collector all such remaining taxes, interest and costs, and the amount necessary to redeem the forfeited general taxes, who shall issue the purchaser a receipt therefor. Any delay in providing the statement or in accepting payment, and delivering receipt therefor, shall not be counted as a part of the 10 days. When the receipt of the collector is issued a copy shall be filed with the county clerk and the county clerk shall include the amount shown in such receipt in the amount of the purchase price of such land in the certificate of purchase, and thereupon the purchaser shall be entitled to a certificate of purchase. If a purchaser fails to complete

his purchase as herein provided, the purchase shall become void, and be of no effect, but the collector shall not refund the amount paid in cash at the time of the sale, except in cases of sale in error. Such amount shall be treated as a payment and distributed to the taxing bodies as other collections are distributed. The lien for taxes for such amount, however, shall remain on the land, in favor of the purchaser, his heirs or assigns, until paid with 5% interest on such amount from the date the purchaser paid it, and the amount and fact of such ineffective purchase shall be entered in the tax judgment sale redemption and forfeiture record opposite the land upon which the lien remains. No redemption shall be made without payment of this amount for the benefit of the purchaser, and no future sale of the land shall be made except subject to the lien of such purchaser. This section shall not apply to any purchase by any city, village or town in default of other bidders at any sale for delinquent special assessments." (Emphasis supplied.)

■■ The statute contemplates that two payments shall be made by the purchaser in order to complete the sale, "first, a payment 'forthwith in cash' of the amount of 'taxes, interest and costs as advertised,' and thereafter payment of other amounts due. The subsequent reference to 'the amount paid in cash at the time of sale' makes the meaning unmistakable." (*Hoffman v. Stuckslager* (1971), 48 Ill. 2d 262, 267, 269 N.E.2d 501, 504.) Plaintiff here refused to make the second payment claimed as due by defendants and if, as plaintiff claims, the 1972 and 1973 taxes are to be considered as paid as to it, no second payment is due and it has a right to the certificate of purchase. Therefore, the question is whether, under *Jackson Park Hospital Co. v. Courtney* (1936), 364 Ill. 497, 4 N.E.2d 864, the taxes for 1972 and 1973 must be considered paid as far as plaintiff is concerned.

The plaintiff in *Jackson Park Hospital* sought an injunction to prevent defendant county officials from instituting proceedings to collect property taxes for the year 1927 due on real property acquired by plaintiff's predecessor in 1933. Plaintiff alleged that before the property had been purchased on its behalf from the trustee in bankruptcy for Jackson Park Hospital, a search had been made of the tax judgment, sale, redemption and forfeiture record, and the taxes for 1927 were stamped "Paid." However, the collector's warrant book showed that the property had been assessed for taxes in that year and the officials had sought and obtained an order of judgment and sale from the court, but no steps had yet been taken to enforce the order. Plaintiff alleged on information and belief that the defendants were about to enforce the order of judgment and sale to its irreparable injury. The trial court dismissed the complaint

for want of equity on motion of defendants. The supreme court reversed, holding that plaintiff, as a third party, took the property free from the lien of 1927 taxes on the facts presented:

"When the clerk stamped as paid the taxes against the property now owned by appellant, in the tax judgment sale, redemption and forfeiture record, they became paid so far as third persons were concerned. He is conclusively presumed to have complied with the law and not to have made the entry unless the taxes were actually paid, and when those records were examined on behalf of appellant's grantor and showed the taxes against this property paid, he was justified in relying upon the record." 364 Ill. 497, 501, 4 N.E.2d 864, 866.

In holding that a corporation, successor to a trust in ownership of real properties against which taxes were mistakenly shown as "paid" in the Record, was not a "third party" within the meaning of that phrase in *Jackson Park Hospital*, the court stated in *Forman Realty Corp. v. Brenza* (1957), 11 Ill. 2d 531, 539, 144 N.E.2d 623, 627: "Since the effect of that decision is to deprive the county of moneys to which it is lawfully entitled, we are not disposed to extend its operation in any manner."

We would be extending the operation of the rule in *Jackson Park Hospital* if we sustained the arguments of plaintiff Thornton. In *Jackson Park Hospital*, the hospital corporation had acquired a fee ownership of the property by purchase from the owner, whereas Thornton, even if it had completed its purchase, would not have acquired a fee title until after the expiration of the period of redemption. (*Schwartz v. City of Chicago* (1974), 21 Ill. App. 3d 84, 95, 315 N.E.2d 215, 224.) The hospital corporation relied on the Record to protect its title, whereas Thornton seeks to rely on the Record in order to acquire a certificate of purchase. While it is undisputed that Thornton is not in privity with the owner of the property and thus may literally be a "third party" to the Record (*Forman Realty Corp.*), this is not determinative of its right to the relief it requests.

We construe section 247 as contemplating that two payments be made before a purchase is completed and the purchaser is entitled to a certificate of purchase. (*Hoffman*.) When plaintiff paid the price which he had successfully bid at the sale of lands, he became entitled to the certificate upon payment of the unadvertised taxes due, and only then. When the clerk receives an application by a purchaser for a statement of the taxes, interest and costs not included in the advertisement, the clerk has a duty to list all such sums due, and to correct the tax judgment, sale, redemption and forfeiture record if it is in error. Since the clerk in the instant case discovered the error before delivering the statement to plaintiff and before accepting payment and delivering a receipt therefor, defendants properly required payment from plaintiff of the $36,000

due as a prerequisite to delivery of the certificate of purchase. To hold that the taxes as to plaintiff were paid, under the facts presented, would be an unwarranted extension of *Jackson Park Hospital* at the expense of the public treasury. *Forman Realty Corp.*

■■ Therefore, it was the duty of defendants to refuse plaintiff's request for a certificate of purchase until plaintiff paid the sums discovered as due and owing against the property. The trial court properly entered summary judgment in favor of defendants, because mandamus will not lie to force a public official to violate his duty under the law. *People ex rel. Ammann v. Dipper* (1945), 392 Ill. 38, 63 N.E.2d 870.

While our decision may appear to penalize a sophisticated tax bidder who has searched the tax records before deciding to participate in a sale, it must also be recognized that to accept plaintiff's position would be to penalize the taxpayers of the county for what is apparently a clerical error, in the amount of $36,000 in this case. We note several other cases reported where the Record has been shown to be in error. (*In re Application of County Collector* (1975), 30 Ill. App. 3d 757, 334 N.E.2d 273; *In re Application of County Collector* (1971), 3 Ill. App. 3d 245, 278 N.E.2d 861; *Southmoor Bank & Trust Co. v. Willis* (1958), 15 Ill. 2d 388, 155 N.E.2d 297.) Where the error is discovered before a sale is completed, there are no reasons in law or equity for not permitting the error to be corrected. We also note that plaintiff's loss is not total. While section 247 specifies that an uncompleted sale is void and of no effect, and the collector shall not refund the amount paid in cash at the time of sale to the purchaser who does not complete his sale, the purchaser who does not complete retains a lien in the amount he has paid, which accrues 5% interest from the date he paid it. Moreover, the trial court in this case found that it was within the court's equitable powers to order a refund of the moneys paid because of the error, but plaintiff refused to accept the court's offer.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.