MARSHALL E. WINOKUR, Plaintiff-Appellant, *v.* MICHAEL J. BAKALIS *et al.*,
Defendants-Appellees.

First District (5th Division)    No. 79-522

Opinion filed May 30, 1980.

Prins, Flamm & Susman, Ltd., of Chicago (Arnold M. Flamm, of counsel),
for appellant.

William J. Scott, Attorney General, of Chicago (George H. Klumpner and
Jerome J. Webb, Assistant Attorneys General, of counsel), for appellees.

Lee J. Schwartz, of Chicago (David A. Epstein, James Bagley, Richard
Durbin, Ronald Nelson, and Glenn Braden, of counsel), for *amici curiae.*

Mr. JUSTICE WILSON delivered the opinion of the court:

This appeal arises out of a taxpayer's suit challenging the
constitutionality of two State statutes involving increases in the salaries
payable to the members of the 81st General Assembly and seeking an
injunction enjoining the disbursement of public funds for payment of the
salaries. The trial court upheld the constitutionality of the statutes and
dismissed the action. The sole issue on review is whether article IV,
section 11 of the Illinois Constitution of 1970 prohibits a change in
legislative salaries from taking effect during a legislative term for which
the members have been elected, but have not taken office, as of the date
of passage of the law. We affirm the judgment of the trial court. The facts
relevant to this issue follow.

On November 7, 1978, a general election was held to elect the
members of the 81st General Assembly. The term of office of that body
commenced on January 10, 1979. On November 30, 1978, a bill

designated as Public Act 80-1470[1] was passed by the 80th General Assembly, which amended chapter 63, section 14 of the Illinois Revised Statutes by increasing the salaries of the members of the 81st General Assembly, and all subsequent General Assemblies in the amount of $8,000 per year. On January 8, 1979, another bill designated as Public Act 80-4th S.S.—1[2] was enacted which further amended chapter 63, section 14 of the Illinois Revised Statutes by reducing the previously approved legislative salary increase to the extent of $3,000 during the first year of the term of the 81st General Assembly.

Thereafter, plaintiff, Marshall E. Winokur, filed a taxpayer's suit against defendants Michael J. Bakalis, Comptroller of the State of Illinois, and Donald R. Smith, Treasurer of the State of Illinois, challenging the constitutionality of the statutes in question. The complaint alleged, in essence, that the statutes are unconstitutional as violative of article IV, section 11 of the Illinois Constitution of 1970 which provides as follows:

"A member [of the General Assembly] shall receive a salary and allowances as provided by law, but changes in the salary of a member shall not take effect during the term for which he has been elected."

Plaintiff prayed for: (1) a permanent injunction enjoining the disbursement of public funds for payment of the salaries; (2) a temporary injunction ordering the sequestration of those funds in a separate interest-bearing account to be held under the jurisdiction of the court during the pendency of this litigation; and (3) an award for costs of suit and attorneys' fees.

In response, defendants filed a motion to dismiss and a memorandum in support thereof asserting that (1) the statutes are valid and constitutional as a matter of law; (2) the class action is unnecessary and inappropriate in this case since a judgment for plaintiff will result in a binding judgment on defendants regardless of whether a class exists; (3) the creation of a fund is inappropriate, unnecessary, and beyond the power of the court to grant; and (4) the State of Illinois is immune from an award of costs and attorneys' fees.

In addition, several members of the 80th General Assembly[3] joined as *amici curiae* in support of the validity of the challenged legislation. They argued that the statutes are constitutional based on: (1) the explicit language of the Constitution; (2) the history of the constitutional

---

[1] The complete text of Public Act 80-1470 is appended to this opinion.

[2] The complete text of Public Act 80-4th S.S.—1 is appended to this opinion.

[3] House Speaker William A. Redmond; Senate President Philip J. Rock (who succeeded Senator Thomas C. Hynes as President of the Senate on January 1, 1979); House Minority Leader George H. Ryan; and Senate Minority Leader David C. Shapiro.

convention and of prior Illinois Constitutions; (3) case law; (4) principles adopted throughout the United States; and (5) public policy.

Subsequent to the filing of various reply memoranda by all parties, the trial court granted defendants' motion to dismiss and upheld the constitutionality of the statutes under article IV, section 11 of the Illinois Constitution of 1970. Plaintiff appeals that judgment.

OPINION

Initially, we must determine whether the cause of action is moot since a portion of the funds that constitute the injunctive relief prayed for has been spent and therefore no longer available. In his complaint, plaintiff prayed for an injunction enjoining the disbursement of public funds for payment of the legislative salaries in question. During oral argument, both plaintiff and defendant conceded the issue of mootness as to the appropriation made prior to June 30, 1979; however, they argued that the current appropriation can still be challenged. On the other hand, *amici curiae* asserted that the cause of action is moot since the past as well as current appropriations have been spent, and because plaintiff failed to attack the specific appropriation in his pleadings. We disagree.

"A case can become moot when, pending the decision on appeal, events occur which render it impossible for the reviewing court to grant effectual relief to either party." (*Bluthardt v. Breslin* (1979), 74 Ill. 2d 246, 250, 384 N.E.2d 1309, 1311.) Upon careful examination of the arguments presented by all parties, we believe that the unavailability of the appropriations made prior to June 30, 1979, does not render moot this action since the current appropriation can still be challenged. Nor does the absence of a specific designation in the pleadings have any bearing on this issue. We find, therefore, that this cause of action is not moot since there remain funds available for the granting of effectual relief to the parties.

Next, we must determine whether article IV, section 11 of the Illinois Constitution of 1970 prohibits a change in legislative salaries from taking effect during a term for which the members have been elected, but have not taken office, as of the date of passage of the law. Plaintiff contends that based upon the plain meaning of the statute, a general election must intervene between the adoption of the law increasing salaries and the date upon which it takes effect. Defendants and *amici curiae* argue that the plain meaning of the statute is to merely prohibit the law increasing salaries from taking effect during the term in which it is enacted; consequently, an intervening election is not required. We accept this interpretation of the statute.

In support of their position, defendants and *amici* rely heavily upon the case of *Foreman v. People ex rel. McEwen* (1904), 209 Ill. 567, 71 N.E.

35, wherein a claim was made for additional compensation by relator, a circuit court judge who was elected to fill the vacancy in a six-year term of office which began in November 1899 and expired in December 1905. At the time of his election in November 1902, the salary of the judge of the court was $7,000 per year. Relator argued that he was entitled to an additional $3,000, so as to make his salary equal to $10,000, by virtue of an act in force July 1, 1901, which provided as follows:

> " 'That the judges of the circuit and superior courts of Cook county hereafter to be elected shall each be paid by the said county, in addition to the salaries which may be paid to them from the State treasury, such further compensation as will make their respective salaries amount to the sum of $10,000 per year.' " (*Foreman*, 209 Ill. 567, 568-69, 71 N.E. 35.)

Appellants there argued that the act applied only to judges to be elected after its passage, as provided by law for the regular terms of six years, and that it did not apply to relator, who was elected to fill the vacancy for part of a term that commenced before the passage of the act; and also that any other construction of the statute would bring it in direct conflict with the constitution.

The court subsequently held that the act was not intended to apply to one who should be elected or appointed to fill the unexpired period of a term for which the salary had been fixed by law under the provisions of the 1870 Illinois Constitution. This decision was based upon the court's interpretation of various constitutional limitations on increasing or diminishing the salaries of public officers. Regarding the judiciary the court referred to: (1) article VI, section 7 of the 1870 Illinois Constitution, which provided that the salaries of the judges of this court "shall not be increased or diminished during the terms for which said judges shall have been elected" (*Foreman*, 209 Ill. 567, 573, 71 N.E. 35, 37); (2) as to circuit judges, section 16 provided, "and after their salaries shall be fixed by law, they shall not be increased or diminished during the terms for which said judges shall be, respectively, elected" (*Foreman*, 209 Ill. 567, 573, 71 N.E. 35, 37); and (3) as to judges of the superior and circuit courts of Cook County, section 25, which stated, "[s]uch compensation shall not be changed during their continuance in office." *Foreman*, 209 Ill. 567, 573, 71 N.E. 35, 37.

The court went further by refusing to recognize any difference in constitutional language as between judges and other public officers where constitutional limitations on increasing or diminishing compensation are set forth in similar but not identical language. In this regard the court equated the constitutional provisions as to judges with the constitutional limitation on increasing or diminishing salaries of members of the General Assembly during their terms and stated as follows:

"When we examine the various provisions of the constitution with reference to a change of salary during a term of office, we find that no particular set of words is used to express the limitation on the power of the legislature, but that there is a well defined rule running through the whole instrument that the salary attached to any public office having a fixed term shall not be increased or diminished during that term. With reference to the Legislature, section 21 of article 4 provides that 'no change shall be made in the compensation of members of the General Assembly during the term for which they may have been elected.' * * * While there is no particular set phrase and the language of the different provisions is slightly different, the intention to provide that there shall be no change in the salaries of officers during fixed periods of time is plainly apparent." *Foreman,* 209 Ill. 567, 572-73, 71 N.E. 35, 37.

The court stated further:

"We see no warrant for saying that the words employed in the constitution relating to the salaries of judges of Cook county refer to the individuals, while as to other officials the words relate to the terms of office. To say that the provision relates to the continuance in office of an individual and not a term of office would prevent the increase of salary of a judge upon his re-election, since in that case he would continue in the same office as judge, holding under one election until he began his term of office under the next, with no interval. In such a case there could be no change that would not be during his continuance in office." *Foreman,* 209 Ill. 567, 573-74, 71 N.E. 35, 37.

We believe the reasoning of the court in *Foreman* to be sound and therefore adopt it. Applying the above rationale to the facts presented before us, we find that the language employed in article IV, section 11, "the term for which he has been elected," refers to the current term for which the members of the General Assembly are serving and not to their continuance in office. In other words, the members of the General Assembly cannot effect a change in salaries during the two-year term for which they are presently serving. A change in salaries will only become effective during the next successive term of the legislature. Thus, the clear and unambiguous meaning of the statute is to prohibit a change in legislative salaries from taking effect during the term in which the law authorizing said change is enacted.

Although we note that in *Foreman* the court was called upon to interpret various provisions of the 1870 Constitution, whereas in this case we are called upon to interpret a provision of the 1970 Constitution, we believe that the striking similarity in the language employed in both provisions warrants the same interpretation of those provisions.

Nonetheless, plaintiff contends that the case of *People ex rel. Holdom v. Sweitzer* (1917), 280 Ill. 436, 117 N.E. 625, and not *Foreman*, is controlling here. He argues that the decisive issue in *Sweitzer* involved the court's determination of the constitutionality of a salary increase as applied to previously elected judges whose terms had commenced, but who had not yet taken office. Defendants and *amici* argue, however, that the constitutional discussion in *Sweitzer* is mere *dictum* and that the only issue of constitutional proportion decided by the Court was the question of when the judicial term began, which is not at issue in this case.

In *Sweitzer*, two judges had been elected on June 7, 1915, to the offices of circuit judge. On June 24, a law was passed increasing the salaries of circuit judges. It became effective on July 1, 1915, and provided as follows:

"The judges of the circuit and superior courts of Cook county, hereafter to be elected or who have been elected but whose terms of office have not yet commenced, shall each be paid by the said county, in addition to the salaries which may be paid to them from the State treasury, such further compensation as will make their respective salaries amount to the sum of $12,000 per annum." *Sweitzer* (1917), 280 Ill. 436, 441, 117 N.E. 625, 627.

Both judges claimed that his term of office commenced when his commission of July 13 was issued and when he qualified by signing and forwarding his oath of office. Respondent initially argued that the law increasing the salaries was unconstitutional and alternatively, that assuming the law to be constitutional, it only applied to judges elected after it went into effect.

The supreme court held that the two judges were not entitled to the salary increases based upon its determination of when the judicial term of office began. However, before reaching that question, the court discussed the power of the legislature to fix the salaries of judges under article VI, section 16 and the power of the legislature to increase the salaries of judges under section 25. The court also discussed the theory of the separation of powers between the various branches of government and concluded this portion of the opinion by stating that the two judges were not entitled to salary increases since they were elected before the passage of the law.

Despite the court's position on this matter, we agree with defendants and *amici*, that the real issue in *Sweitzer* focused on when the judicial term of office began. We believe the precedential value of that case lies not in the court's interpretation of the constitutional restrictions on judicial salary increases, but, rather, in the court's determination of when the term of office began, which as all parties concede, is not at issue in the case at bar. An additional ground upon which *Sweitzer* can be distinguished

from the present case is that here we are not involved with a delay in taking the oath of office as was the situation in *Sweitzer*.

Having determined that article IV, section 11 of the Illinois Constitution of 1970 is clear and unambiguous, based upon the guidance of the court in *Foreman*, we need not address the remaining policy arguments advanced by plaintiff.

Accordingly, we affirm the judgment of the trial court.

Judgment affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.

### "APPENDIX
### PUBLIC ACT 80-1470
### HOUSE BILL 255

An Act relating to the compensation of certain elected and appointed State officials and judges, and to the compensation and mileage allowance of members of the General Assembly.

*Be it enacted by the People of the State of Illinois, represented in the General Assembly*:

* * *

Section 10. Section 1 of "An Act in relation to the compensation and emoluments of members of the General Assembly", approved December 6, 1907, as amended, is amended to read as follows:
Sec. 1. Each member of the General Assembly shall receive for the 2 year period for which members of the House of Representatives of the General Assembly are elected, the sum of $28,000 per year. The following named officers shall receive additional amounts per year for their services as such officers, respectively, as follows: The Speaker and the minority leader of the House of Representatives and the President and the minority leader of the Senate, $10,000 each; the majority leader in the House of Representatives $7,500 each; 4 assistant majority leaders and 3 assistant minority leaders in the Senate, $6,000 each; 3 assistant majority leaders and 3 assistant minority leaders in the House of Representatives, $6,000 each; and 2 majority whips and 2 minority whips in the House of Representatives, $5,000 each. The compensation provided for in this Section to be paid per year to members of the General Assembly, including the additional sums payable per year to officers of the General Assembly shall be paid in 12 equal monthly installments. The first such installment is payable on January 31,

1977. All subsequent equal monthly installments are payable on the last working day of the month. A member who has held office any part of a month is entitled to compensation for an entire month.

Mileage shall be paid at the rate of 20 cents per mile for the number of actual highway miles necessarily and conveniently traveled by the most feasible route to be present upon convening of the sessions of the General Assembly by such member in each and every trip during each session in going to and returning from the seat of government, to be computed by the Comptroller. A member travelling by public transportation for such purposes, however, shall be paid his actual cost of that transportation instead of on the mileage rate if his cost of public transportation exceeds the amount to which he would be entitled on a mileage basis. No member may be paid, whether on a mileage basis or for actual costs of public transportation, for more than one such trip for each week the General Assembly is actually in session. Each member shall also receive an allowance of $36 per day for lodging, meals, and all other incidental expenses while in attendance at sessions of the General Assembly.

If a member dies having received only a portion of the amount payable as compensation, the unpaid balance shall be paid to the surviving spouse of such member, or, if there be none, to the estate of such member.

\* \* \*

Section 20. This amendatory Act takes effect upon its becoming a law.

P.A. 80-1470, eff. Nov. 29, 1978."

## "PUBLIC ACT 80-4th S.S.—1
## HOUSE BILL 802

An Act relating to the compensation of certain elected and appointed State officials and to the compensation of members of the General Assembly.

*Be it enacted by the People of the State of Illinois, represented in the General Assembly:*

\* \* \*

Section 9. Section 1 of "An Act in relation to the compensation and emoluments of members of the General Assembly", approved December 6, 1907, as amended, is amended to read as follows:

Sec. 1. Each member of the General Assembly shall receive an annual salary of $25,000 from the second Wednesday in January, 1979 to the second Wednesday in January, 1980, and $28,000

thereafter. The following named officers shall receive additional amounts per year for their services as such officers, respectively, as follows: The Speaker and the minority leader of the House of Representatives and the President and the minority leader of the Senate, $10,000 each; the majority leader in the House of Representatives $7,500 each; 4 assistant majority leaders and 3 assistant minority leaders in the Senate, $6,000 each; 3 assistant majority leaders and 3 assistant minority leaders in the House of Representatives, $6,000 each; and 2 majority whips and 2 minority whips in the House of Representatives, $5,000 each. The compensation provided for in this Section to be paid per year to members of the General Assembly, including the additional sums payable per year to officers of the General Assembly shall be paid in 12 equal monthly installments. The first such installment is payable on January 31, 1977. All subsequent equal monthly installments are payable on the last working day of the month. A member who has held office any part of a month is entitled to compensation for an entire month.

Mileage shall be paid at the rate of 20 cents per mile for the number of actual highway miles necessarily and conveniently traveled by the most feasible route to be present upon convening of the sessions of the General Assembly by such member in each and every trip during each session in going to and returning from the seat of government, to be computed by the Comptroller. A member traveling by public transportation for such purposes, however, shall be paid his actual cost of that transportation instead of on the mileage rate if his cost of public transportation exceeds the amount to which he would be entitled on a mileage basis. No member may be paid, whether on a mileage basis or for actual costs of public transportation, for more than one such trip for each week the General Assembly is actually in session. Each member shall also receive an allowance of $36 per day for lodging, meals, and all other incidental expenses while in attendance at sessions of the General Assembly.

If a member dies having received only a portion of the amount payable as compensation, the unpaid balance shall be paid to the surviving spouse of such member, or, if there be none, to the estate of such member.

* * *

Section 19. This amendatory Act takes effect upon its becoming a law.

Approved and effective Jan. 7, 1979."