LILLIAN TUPY, Clerk of the Village of Bridgeview, Plaintiff-Appellant and Cross-Appellee, *v.* JOHN A. OREMUS, President of the Village of Bridgeview, *et al.*, Defendants-Appellees and Cross-Appellants.

First District (5th Division)    No. 81-1163

Opinion filed April 16, 1982.

Burton S. Odelson and Mark H. Sterk, both of Evergreen Park, for appellant.

Marvin J. Glink and Katherine S. Janega, both of Ancel, Glink, Diamond, Murphy & Cope, P. C., of Chicago, for appellees.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals from two orders of the trial court disposing of her three-count petition for *mandamus*, declaratory judgment, injunctive and other relief. Defendants also appeal from portions of both orders. Plaintiff here contends that (1) under an ordinance of the village of Bridgeview (village), she is entitled to serve as village collector by virtue of her election as village clerk; and (2) certain village salary ordinances are unconstitutional, as they were passed and took effect during defendant officials' same terms of office, so that payments made thereunder must be returned. Defendants contend that (1) the trial court erred (a) in not granting their motion to dismiss plaintiff's taxpayer action for failure to comply with statutory requirements and (b) in finding that one salary increase was void and in not ruling on the validity of earlier salary increases; and (2) plaintiff is not entitled to attorney fees.

Plaintiff alleged in counts I and II of her amended petition that she was elected village clerk on April 17, 1979, and took office on May 9, 1979; that on May 10, 1979, village president Oremus announced that the village treasurer had been assigned the duties of village collector, which duties the village clerk had performed in the past; that she had assumed the duties of village collector since her election, and only she and her deputy clerk knew how to perform certain functions of the collector's office; that defendants transferred the clerk's staff from her control in June 1979; and that defendants' actions were intended to intimidate her into resigning. Count I sought a writ of *mandamus* directing defendants to pay plaintiff the collector's salary of $8,500 for each of the four years of her term, as purportedly established by village ordinance; to reinstate the employees under her supervision and award attorney fees. Count II sought, *inter alia*,

a declaratory judgment that under a village ordinance, plaintiff through election as village clerk was entitled to serve as village collector, with the "salary and emoluments" of that office, for a 4-year term expiring April 30, 1983, as previously established by the village authorities.

Count III of the amended petition was brought as a taxpayer action on behalf of plaintiff, all other village taxpayers, and the village, challenging a 1975 salary increase ordinance for the village president and liquor control commissioner and a similar 1979 ordinance for those offices and three trustees elected that year. Relative to that count, it appears that on April 15, 1975, Oremus was re-elected village president, and on April 24, 1975, at the first regular board meeting following the election, the village board of trustees (Board) amended the ordinance pertaining to the salary of village officials by increasing the salaries of both the president and liquor control commissioner from $1,500 under the prior ordinance to $2,500, the ordinance to become "effective commencing with the next term of office of the Village President, Village Clerk and the Village Trustees." (Bridgeview, Ill., Code of Ordinances, Ordinance 75-18 (1975).) At the same meeting, the Board adopted by ordinance the annual village budget for the year beginning May 1, 1975, and ending April 30, 1976. That ordinance reflected the prior salary level at $1,500 per year through April 30, 1975, followed by the increase to $2,500 effective May 1, 1975. (Bridgeview, Ill., Code of Ordinances, Ordinance 75-17 (1975).) The Board then adjourned *sine die*, after which the meeting was reconvened and newly elected officials were sworn into office.

It further appears that on April 17, 1979, Oremus was re-elected village president, Slaninka was re-elected trustee, and Malinowski and Burrow were newly-elected trustees. On April 26, 1979, the Board adopted Ordinance 79-14, which increased the salaries of the village president and liquor control commissioner to $3,500 each per year and the compensation of trustees taking office after May 1, 1979, from $75 to $100 per meeting, and further provided that the specified increases were to become "effective commencing with the next term of office of the Village President and the Village Trustees." (Bridgeview, Ill., Code of Ordinances, Ordinance 79-14 (1979).) That same day, the Board also adopted Ordinance No. 79-15, which was the annual village budget for the year commencing May 1, 1979, and ending April 30, 1980. (Bridgeview, Ill., Code of Ordinances, Ordinance 79-15 (1979).) The officials elected on April 17, 1979, were sworn in at the board meeting on May 3, 1979.

Alleging that the 1975 and 1979 salary increases were void because they were enacted after the elections, in violation of State law (Ill. Const. 1970, art. VII, §9(b); Ill. Rev. Stat. 1975, ch. 24, par. 3—13—1; Ill. Rev. Stat. 1979, ch. 24, par. 3—13—1), plaintiff sought an accounting of the

money paid to defendants, an order directing defendants to repay the amount owed the village, an injunction barring defendants from receiving any salary increases based on ordinances adopted after election to their respective offices, and attorney fees. On August 21, 1980, the trial court dismissed counts I and II with prejudice and struck count III with leave to amend. On December 2, 1980, following plaintiff's motion to vacate, the trial court ordered that counts I and II be dismissed with prejudice and that plaintiff receive the salary appropriate for village collector, *pro rata* from the date she assumed office until May 10, 1979, when the duties of collector were assigned to the village treasurer, and it denied defendants' motion to dismiss count III. On April 14, 1981, following motions for summary judgment by both parties as to count III, the trial court entered an order, *inter alia*, allowing the 1975 salary increases to stand; declaring the 1979 salary increases void as they pertained to village officials elected in April 1979; granting prospective relief only; reserving the question of attorney fees; and staying the order pending appeal.

From the orders of December 2, 1980, and April 14, 1981, the parties appeal.

OPINION

We first consider plaintiff's contention that the trial court erred in dismissing counts I and II of her amended complaint. Plaintiff argues that under the facts alleged, she is entitled to the position of village collector by virtue of being elected village clerk in accordance with *Dumke v. Anderson* (1976), 44 Ill. App. 3d 626, 358 N.E.2d 344. We believe, however, that plaintiff cannot rely on the holding of *Dumke* to state a cause of action under counts I and II, since the facts in *Dumke* are distinguishable.

In *Dumke*, a village president and village clerk brought an action to prevent the abolition, by ordinance, of the office of village collector or the reduction of its salary. The clerk had been re-elected in April 1973 to a 4-year term ending April 30, 1977. The clerk also held the office of collector under an ordinance which provided:

"  'Pursuant to the authority vested unto the village by the Illinois Revised Statutes, Chapter 24, Section 3—8—3, providing that where the village collector is appointed, the village clerk may hold said office of village collector, it is hereby made and provided for that the village clerk shall hold the office of village collector.' " (44 Ill. App. 3d 626, 628, 358 N.E.2d 344, 346-47.)

Midway through the term of the purported clerk-collector, the village board sought to reduce the salary of the collector from $18,120 per year to $1 per year and instructed the village attorney to prepare an ordinance

abolishing the office of collector effective at the end of fiscal year 1975, more than two years before the expiration of his term. In finding that the office of collector could not, under those facts, be abolished or its salary reduced, the court held that sections 3—8—3 and 3—13—11 of the Illinois Municipal Code (Ill. Rev. Stat. 1971, ch 24, pars. 3—8—3, 3—13—11) did not permit the offices of clerk and collector to be combined but rather that one person could hold both the elective office of clerk and the appointive office of collector. Focusing upon the nature of the appointing power under section 3—8—3 of chapter 24, the court further stated that such power had been placed in the hands of the electorate under the ordinance in question, and thus, when the electorate cast their votes for the office of clerk, they also decided who was to be collector for the 4-year term. Accordingly, the clerk's and the collector's terms of office were co-extensive. We are of the view, therefore, that *Dumke* stands for the proposition that where the choice of collector is entrusted by ordinance to the electorate through their choice for clerk, the office of collector may not be abolished or its salary reduced during the term of the incumbent clerk.

In the present case, by contrast, the appointing power is not reserved to the electorate. Section 1—7—10 of the Code of Ordinances (Bridgeview, Ill., Code of Ordinances, section 1—7—10 (1979)) provides:

"EX-OFFICIO COLLECTOR: The Clerk shall act as and perform all duties of collector unless and until a separate collector is appointed."

Initially, we note that section 1—7—10 is authorized under section 3—8—3 of the Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 3—8—3), which provides in relevant part:

"If, in any village a village collector is appointed, the village board may provide by ordinance that the village clerk shall hold the office of village collector."

Thus, it is within the power of the appropriate municipal authorities to appoint a collector and to designate, by ordinance, that the village clerk shall hold that office.

We think it clear that, unlike *Dumke*, the ordinance here does not transfer the appointing power to the electorate. Such power remains instead with the village president, by and with the advice and consent of the Board (Ill. Rev. Stat. 1979, ch. 24, par. 3—8—1), and plaintiff does not assert here that such consent was not secured.

■■ Accordingly, we hold that the trial court did not err in finding that plaintiff failed to allege either a legal right to the position of village collector or any cognizable injury resulting from the transfer of the collector's duties to the treasurer. Absent such allegations, plaintiff failed to state a cause of action for mandamus under count I and likewise failed

to demonstrate, under count II, her right to a declaration that she is entitled to the position of village collector. See *Hoskins v. Abbott* (1977), 69 Ill. 2d 20, 370 N.E.2d 514; *Thornton, Ltd. v. Rosewell* (1977), 51 Ill. App. 3d 373, 366 N.E.2d 418, *aff'd* (1978), 72 Ill. 2d 399, 381 N.E.2d 249; *People ex rel. Endicott v. Huddleston* (1975), 34 Ill. App. 3d 799, 340 N.E.2d 662.

We turn next to the validity of the 1975 and 1979 salary increase ordinances. Preliminary to examination of the ordinances themselves is defendants' contention that count III, in which plaintiff attacked the ordinances, should have been dismissed. They maintain that inasmuch as plaintiff failed to comply with the requirement of filing a bond under section 1—5—1 of the Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 1—5—1) and as count III contains no factual allegations that any payments had been made "without authority of law," she cannot maintain the suit.

Section 1—5—1 provides:
> "A suit may be brought by any taxpayer, in the name and for the benefit of the municipality, against any person to recover any money or property belonging to the municipality, or for any money which may have been paid, expended, or released without authority of law. But such taxpayer shall file a bond for all costs, and shall be liable for all costs in case the municipality is defeated in the suit, and judgment shall be rendered accordingly."

Contrary to defendants' position, we believe that section 1—5—1 does not require the filing of a bond as a precondition to the bringing of the action.

In essence, plaintiff's count III is an action to recover money allegedly belonging to the municipality and to enjoin improper disposition thereof. Generally, the condition precedent to the maintenance of such a taxpayer action is to make a demand on the proper public official to bring suit in the name of and on behalf of the municipality unless it is shown that such demand would be useless. (*Metropolitan Sanitary District ex rel. O'Keeffe v. Ingram Corp.* (1981), 85 Ill. 2d 458, 426 N.E.2d 860; *People ex rel. City of Chicago v. Schreiber* (1944), 322 Ill. App. 452, 54 N.E.2d 862.) Significantly, defendants do not contend that plaintiff failed to make such demand or that, had such demand been made, it would not have been futile. Moreover, it has been held that the court may permit the filing of a bond in a taxpayer action *nunc pro tunc.* (*Cascione v. Morris* (1963), 243 N.Y.S.2d 67, 40 Misc. 2d 431; *Shaw v. Topping* (1955), 142 N.Y.S.2d 490.) Also, as fully explained below, we believe count III states a cause of action to recover payments made without authority of law. Accordingly, we reject the contention that count III should have been dismissed.

With respect to the ordinances, defendants contend that they are entitled to summary judgment as to count III because the trial court erred in refusing to uphold the validity of the 1975 salary increases and in holding the 1979 increases to be invalid. They maintain that the salary increases in both years were valid, as they were enacted before the new terms of office began, and three arguments are advanced in support of that position. They posit, first of all, that despite the absence of any express provision fixing the beginning of their term of office, a reading of the village's ordinances as a whole demonstrates that the term for both elected and appointed officials commenced on May 1, following their election. Secondly, they assert that the salary increases were properly enacted after the election and before the purportedly new term of office began on May 1. Finally, they argue in the alternative that even if the new term did not commence on May 1, the salary increases were nevertheless valid since, in the absence of a constitutional or statutory provision setting the date on which the term of office of an elected official begins, such term commences when the official qualifies for office. Having considered defendants' arguments, we find that the trial court did not err.

Constitutional and statutory limitations are placed on the power to establish the compensation of municipal officers. The Constitution (Ill. Const. 1970, art. VII, §9(b)) provides:

"An increase or decrease in the salary of an elected official of any unit of local government shall not take effect during the term for which that officer is elected."

Similarly, the Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 3—13—1) provides in relevant part:

"All municipal officers, except as otherwise provided, shall receive the salary, fees, or other compensation that is fixed by ordinance. After they are once fixed, these salaries, fees, or other compensation shall not be increased or diminished, so as to take effect during the term of any elected municipal officer. The salaries, fees or other compensation of any appointed municipal officer, not including those appointed to fill vacancies in elective offices, may be increased but not diminished so as to take effect during the term for which such officer was appointed."

Thus, the salaries of elected municipal officials may not be increased to take effect during the term for which the officials were elected. It is conceded in the present case that no single provision of the Constitution or of a statute or ordinance in effect at the time fixed a beginning date for the term of office of defendants. Therefore, a determination of when the terms of office began is the threshold question we must address in establishing the propriety of the salary increases.

In taking the position that the village ordinances, as a whole, fix May

1 as the beginning of the term, defendants rely on *Winokur v. Bakalis* (1980), 84 Ill. App. 3d 922, 405 N.E.2d 1329. In that case, two State statutes increasing the salaries of members of the General Assembly were enacted after the general election of November 7, 1978, to take effect on November 29, 1978, and January 7, 1979. While neither statute referred to a beginning date for the legislators' terms of office, the court found the term commenced on January 10, 1979, the date the legislature began its business following the general election in which the legislators were elected. It was held that a provision of the Constitution (Ill. Const. 1970, art. IV, §11), requiring that salary changes for the General Assembly not take effect during the term for which its members were elected, prohibits a salary increase from taking effect during the term in which such statute is enacted. The court also held that the same constitutional provision does not prohibit legislative salary changes from taking effect during the term for which members have been elected, where such members have not taken office as of the date the salary increase is enacted. (Also see *Foreman v. People ex rel. McEwen* (1904), 209 Ill. 567, 71 N.E. 35.) Significantly, however, in finding that the term of the General Assembly began on January 10, 1979, the court in *Bakalis* implicitly relied upon the constitutional provision that the "General Assembly shall convene each year on the second Wednesday of January" (Ill. Const. 1970, art. IV, §5(a)) as fixing the term of office of legislators elected in November 1978 on the second Wednesday of January 1979, and the court expressly stated that there was no issue as to the beginning of the term of office. We think it clear, therefore, that the *Bakalis* court drew its finding as to the beginning of the legislature's term solely from the above quoted language of the Constitution. Accordingly, defendants' position is not supported by *Bakalis*, and we do not accept May 1 as the beginning of the term of defendant trustees' term of office on that basis.

It follows from our rejection of the May 1 starting date that defendants' second premise, dependent as it is upon the first, is likewise invalid. Nevertheless, they assert in this regard that the salary ordinances were properly enacted in the interim between the elections of 1975 and 1979 and the purported beginnings of the terms on May 1. While it is true, as defendants point out, that in order for a salary increase to be valid an election need not intervene between the enactment of such increase and its effective date (*Winokur v. Rosewell* (1980), 83 Ill. 2d 92, 414 N.E.2d 724; *Foreman v. People ex rel. McEwen* (1904), 209 Ill. 567, 71 N.E. 35; *Winokur v. Bakalis* (1980), 84 Ill. App. 3d 922, 405 N.E.2d 1329), those cases, upon which they rely, however, are inapposite because in each the term of office commenced on a fixed date. Thus, the applicability of those cases depends upon our acceptance of May 1 as the beginning of the terms in question, which view we do not endorse.

As to the alternative grounds that the term commences when the official qualifies for office, defendants rely upon *People ex rel. Evans v. Callaghan* (1876), 83 Ill. 128. That case involved a section of the Township Organization Act then in effect, which was construed as providing that a village collector's term of office began when he took the required oath within 10 days of election. Taking such oath in the manner prescribed by the Constitution of 1870 was required of every elected or appointed town official, and neglecting to do so was deemed a refusal to serve, in which case the office could be regarded as vacant. Defendants contend that *Callaghan* governs because section 3—2—6 of chapter 24 requires officials to qualify within 10 days after notice of election or appointment (Ill. Rev. Stat. 1979, ch. 24, par. 3—2—6); that under *Callaghan* their terms began when they took the oath; and that since the taking of the oath followed enactment of the salary ordinances, the increases were valid, as they did not take effect during the term in which such ordinances were enacted.

■■ In our view, however, the question of when the term commenced as well as the applicability of *Callaghan* is resolved by *People ex rel. Holdom v. Sweitzer* (1917), 280 Ill. 436, 117 N.E. 625. There, the general rule was stated to be that if no time is fixed by constitution or statute for the beginning and ending dates of a term of office, it begins, in the case of elected officials, on the date of the election. (Also see *People ex rel. Sullivan v. Powell* (1966), 35 Ill. 2d 19, 217 N.E.2d 806; *People v. Rezek* (1951), 410 Ill. 618, 103 N.E. 127, *cert. denied sub nom. May v. Illinois* (1952), 343 U.S. 965, 96 L. Ed. 1362, 72 S. Ct. 1059; *State ex rel. Sanchez v. Dixon* (La. App. 1941), 4 So. 2d 591; *Marshall v. Harwood* (1854), 5 Md. 423; *State ex rel. Brown v. Constable* (1835), 7 Ohio 7.) Thus, in *Sweitzer*, it appeared that no time was fixed for the commencement of the term of certain judges, but the date of the election and the length of their term were fixed. Similarly, in the present case, the beginning of the term of defendant officials was not fixed, but the date of their election in 1975 and 1979 and the length of their terms were. Accordingly, it is our belief that the rule of *Sweitzer* applies, so that defendants' terms of office began on the dates they were elected. Consequently, the salary increase ordinances of 1975 and 1979 were adopted after their terms had begun and are, therefore, in violation of the Constitution (Ill. Const. 1970, art. VII, §9(b)) and the Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 3—13—1).

We also think it significant that the *Sweitzer* court carefully distinguished *Callaghan*, stating that while the term of office as fixed by law is sometimes understood to be synonymous with the terms or time of occupancy of the incumbent, the two concepts are entirely different. In this regard, the *Sweitzer* court pointed out that an officeholder's term, by

which is meant his time of holding office, does not commence until he qualifies by taking the oath of office, where required, or by giving his oath and bond where both are required. An officer, in the court's view, who had not so qualified, would not be entitled to draw his salary and perform his official duties. Thus, in light of *Sweitzer*, we believe that, unlike the circumstances presented here, *Callaghan* applies to determine the time of an incumbent's occupancy of office and not when the term of office, as fixed by law, commences. Therefore, as defendants' reliance upon *Callaghan* shifts ground in middebate, it is misplaced.

As a consequence of our finding that the salary increase ordinances are invalid, we must determine whether the trial court correctly ruled that its order was to operate prospectively. Plaintiff contends that where a taxpayer, as here, successfully challenges disbursements made by public officials under a void ordinance, that money must be returned.

In support of its position, plaintiff cites numerous authorities. We find it unnecessary to discuss them in detail, however, and we note that as all are factually distinguishable, they are unavailing.

■■ In the order of April 14, 1981, the trial court ruled that the salary increases under the 1979 ordinance were void to the extent they pertained to officials elected in April 1979. The court did not rule on the validity of the 1975 ordinance, finding that the money paid to defendants thereunder had been spent and that the ordinance had expired along with the terms of office which it affected. The record further indicates that plaintiff is familiar with the operation of the village, including its appropriation ordinances, having served as deputy clerk and deputy collector for 13 years prior to her election as village clerk. Plaintiff did not, however, challenge the salary increases until the present dispute arose over the office of village collector. Thus, it appears that plaintiff knew of the practices of the village but did not challenge the salary increases until she herself was dissatisfied with her status as a village official and that she made no attempt to prevent further prejudice to defendants except for a motion to segregate funds, on which she only requested that it be generally continued. In the light of those facts, we believe the trial court properly granted prospective relief.

■■ Finally, although the trial court did not rule on plaintiff's request for attorney fees, in order to bring this matter to conclusion, we consider her entitlement thereto. In this regard, we note that while the conduct of defendants in enacting the salary increase ordinances was illegal, "the considerations that have supported the 'elementary rule' that members of a municipal legislative body are not personally liable for their legislative acts [citation] remain applicable here." (*Pechous v. Slawko* (1976), 64 Ill. 2d 576, 593, 357 N.E.2d 1144, 1153-54; also see *Dumke v. Anderson* (1976),

44 Ill. App. 3d 626, 358 N.E.2d 344.) There being no ground for placing the burden of attorney fees on the taxpayers of the village, plaintiff's request should have been denied, and this matter will be remanded for the entry of such an order.

For the reasons stated, the judgment is affirmed, and this matter is remanded with direction to enter an order denying attorney fees to plaintiff.

Affirmed and remanded with direction.

LORENZ and WILSON, JJ., concur.