Carhart, J.
Plaintiff, International Brotherhood of Correctional Officers, Local 254 (the “Union”), brings this action for declaratory and injunctive relief claiming that it is entitled to state funding for a collective bargaining agreement it entered into with Worcester County. Defendants argue that the Union’s claim for funding is moot because the disputed funds have already been disbursed and the Legislature did not specifically intend to fully fund the Worcester County corrections collective bargaining agreement. The parties have now filed cross motions for summary judgment pursuant to Mass.R.Civ.P. 56.[2]
BACKGROUND
In April and May of 1993, the Union and Worcester County reached an agreement (“Agreement") for the period July 1, 1991 through June 30, 1994. The Agreement contained two parts pertaining to wages. The first part was for a one-grade pay increase effective June 1, 1993, and an additional one-grade pay increase effective January 1, 1994, subject to funding by the Commonwealth. The second part provided the following:[3]
The County agrees that it will not object to the petition filed by the General Court requesting implementation of the Factfinder’s wage recommendation for 7/1/89 and 7/1/90 for retroactive pay purposes only, provided the State provides the funds for the retroactive pay; provided further, if any adjustment is made by the General Court it will be subject to the terms of this agreement.
On August 9, 1993, the General Court passed the final fiscal year 1993 supplemental budget. St. 1993, c. 151. On August 19, 1993, the Governor vetoed certain parts of that bill, including St. 1993, c. 151 §138. On or about December 20, 1993, the General Court overrode the Governor’s veto of §138 and the section was passed tato law- Section 138 read “ pertinent part:
Notwithstanding any general or special law to the contrary, any collective bargaining agreement entered into by any county that receives funds from the commonwealth and any recognized collective bargaining unit shall be deemed to be approved.
In the fall of 1993, the Legislature was considering additional appropriations for county corrections purposes. On November 18, 1993, at the request of Rep. Thomas Finneran, Chairman of the House Ways and Means Committee, Leslie Kirwan (“Kirwan”), Chairman of the County Government Finance Board (“Board”), issued a memorandum outlining a draft allocation for a proposed appropriation of $18,000,000 for county corrections purposes. This appropriation was to be enacted in a supplemental state budget.
On November 22, 1993, the House took final action on a fiscal 1994 supplemental state budget in house bill, H. 5620. Line-item 8910-0001 provided $18 million for county correctional purposes, with binding allocations to specified counties of $ 12.9 million. The remaining $5.1 million was to be distributed to fund costs of collective bargaining agreements for county corrections. The $5.1 million was not allocated to any specific counties.
On November 23, 1993 the Board met with members of the Massachusetts Sheriffs’ Association (“MSA”) to discuss funding for county corrections. In early December 1993, the MSA sent a list, dated November 30, 1993, of sheriffs’ requests for funding of collective bargaining costs from the anticipated supplemental appropriation.[4]
On December 15, 1993, the Senate took final action on the supplemental budget in senate bill, S. 1876. The senate version of the supplemental budget did not include a line item for county corrections. As noted above, on December 20, 1993, the full Legislature enacted St. 1993, c. 151, §138 relating to the approval of county collective bargaining agreements.
On or about January 4, 1994, the Legislature passed a supplemental budget for fiscal year 1994, which became effective January 14, 1994. Line-item 8910-0001 in §2A of the budget, appropriated $18 million for county correctional purposes. Of this amount, $10,717,723 was allocated to specified counties, of which Worcester County’s share was $1,062,396. The remaining sum of $7,282,277 was to be distributed by the Board for additional county correction shortfalls and for county correction collective bargaining agreement costs.
On February 11, 1994, the Board approved the distribution of $3,000,000 of the remaining balance from the line-item; $1.5 million to Norfolk County and $1.5 million to Bristol County.
*649 On February 16, 1994, Michael Matta, a member of the Board, wrote to Worcester County Sheriff John M. Flynn outlining the amount of additional funding that would be available to pay for Worcester County corrections collective bargaining commitments.
On March 21, 1994, the Worcester County Sheriffs office submitted to the Board a request for $3,287,061 to fund the second component of the Agreement, funding pay increases retroactive to July 1, 1989 and July 1, 1990.
In March and April, 1994, the Barnstable and Suffolk County Sheriffs’ offices requested funding totalling more than $5.5 million. On May 3, 1994, the Board approved the distribution of the remaining $4,282,277 balance on the line-item. Worcester County received $1,138,819 of this amount. The Board noted that $900,000 of the amount given to Worcester County was intended to fund the amount requested by the Sheriff of Worcester on November 30, 1993 to fund the Agreement wage increases effective June 1993 and January 1994.
According to the state Treasurer’s office, the entire $18,000,000 appropriated in line-item 8910-0001 was completely paid out to county treasurers by June 17, 1994.
DISCUSSION
“In order to bring an action for declaratory relief under G.L.c. 231A, §§1 & 2, there must be both an actual controversy and legal standing.” United Oil Paintings Inc. v. Commonwealth, 30 Mass.App.Ct. 958, 959 (1991), citing Massachusetts Assoc, of Independent Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 292 (1977). A controversy in the abstract is not sufficient, instead the declaration sought must be intended to have an immediate impact on the rights of the parties. United Oil, supra at 959. “Apartyhasstandingwhenitcanallege an injury within the area of concern of the statute . . .” Massachusetts Association of Independent Ins. Agents & Brokers, supra at 293 (citations omitted). After reviewing the relevant materials presented, I conclude that the Union is not entitled to a declaratory judgment on its behalf because it has not suffered a cognizable injury entitling it to immediate relief.
The issue presented in this case is whether the Board is required by law to fund the Worcester County Agreement. General Laws Chapter 150E, §7 (1992 ed.), governing collective bargaining agreements, recognizes the necessity for a valid appropriation by the Legislature to fund the cost items of the agreements. Alliance, AFSCME/SEIU AFL-CIO v. Secretary of Administration, 413 Mass. 377, 382 (1992). In the absence of a valid appropriation, the Union’s argument for funding cannot prevail. Id.; see Town of Milton v. Commonwealth, 416 Mass. 471, 473 (1993) (municipalities’ right to receipt of amount stated in statute depended on the availability of funds appropriated for the purpose).
I. Statutory Interpretation
The relevant laws in this matter are St. 1993, c. 151, §138 and St. 1993, c. 495, §2. As a general rule, when more than one statute requires judicial analysis, the statutes must be reasonably construed, so as to constitute a consistent and harmonious whole capable of producing a rational result. See Vining Disposal Service, Inc. v. Board of Selectmen ofWesiford, 416 Mass. 35, 38 (1993) (citations omitted).
A fair reading of these laws presents the following conclusions. The Legislature passed section 138 of chapter 151, to approve collective bargaining agreements between counties and authorized collective bargaining units. Section 2 of chapter 495, was passed to fund certain items including specific allocated amounts for county corrections operations and maintenance and an unallocated amount for county correction shortfalls and for counly correction collective bargaining agreement costs. This unallocated amount was to be distributed at the discretion of the Board. The Board eventually gave Worcester County $ 1,138,819 for its correction collective bargaining agreement costs.
The Union now claims that a reading of these two laws should lead to the convenient conclusion that the Legislature not only intended to approve the Worcester County Agreement, but also intended to fully fund the Agreement from the unallocated balance left for the Board to distribute in its discretion. The clear language of the legislation in question indicates that the Legislature did not intend to fully fund the Agreement. See Bay State Gas Co. v. Local No. 273, 415 Mass. 72, 75-76 (1993) (where the statutory language is clear, the courts must impart to the language its plain and ordinary meaning. Without evidence to the contrary, a statute’s plain and ordinary meaning is conclusive as to legislative intent); Commonwealth v. One 1987 Mercury Cougar Automobile, 413 Mass. 534, 537 (1992); Massachusetts Community Colleqe Council MTA/NEA v. Labor Relations Commission, 402 Mass. 352,353-54 (1988); cf. Commonwealthv. Fall River Motor Sales, Inc., 409 Mass. 302, 316 (1991) (when statute is ambiguous, it must be interpreted by the plain and ordinary meaning of words used in statute, the cause of its enactment, the mischief to be remedied, and the object to be accomplished). The Legislature could have added a provision specifically allocating sums to Worcester County for its Agreement. Instead, it chose to leave the allocation process to the Board.
II. Mootness
The Union’s argument also fails because the Commonwealth’s distribution of the subject funds has rendered this case moot. A recent decision of the United States Court of Appeals for the District of Columbia Circuit, held that when the government agency has fully allocated the funds appropriated to it by Congress, the funds are no longer available. City of Houston, Texas v. Department of Housing and Urban Development, 24 F.3d 1421, 1426 (D.C. Cir. 1994). *650 “(O)nce the relevant funds have been obligated, a court cannot reach them in order to award relief." Id.; see Brown v. Wright, 203 S.E.2d 487, 489 (1974) (taxpayer action for injunctive relief against revenue commissioner moot where disbursements under relevant appropriations act were substantially completed); State ex rel. Cason v. Bond, 495 S.W.2d 385, 393 (1973) (case moot with respect to those items in state appropriations MI expended prior to the institution of instant suit); cf. Winokur v. Bakelis, 405 N.E. 2d 1329, 1331 (1980) (taxpayer suit not moot since funds remained available for granting effectual relief to the parties). Likewise, in the instant case since the state Treasurer’s office has fully disbursed the funds in the subject supplemental budget, the funds are no longer available to grant the Union the relief it seeks and the case is moot.
III. Effect on Current or Successor Legislature
There is a further reason why the Union’s claim for declaratory relief must fail. The Union seeks a declaration that the Board must fund the Worcester County Agreement. In order for the Board to fund the Agreement at this date, it must get funds from the Legislature. However, one Legislature may not bind a successor Legislature. Milton, supra at 474. Therefore, even assuming, arguendo, that the Legislature intended to fund the Worcester County Agreement through its legislation in 1993, the actions of that Legislature cannot bind its present or future successors to make a particular appropriation. Id.
W. Conclusion
In light of the legislative process and legal conclusions applicable to the instant case, the Union has no claim for declaratory relief. First, the Legislature made no specific appropriation that the Worcester County Agreement be fully funded. Instead, Worcester County received two specific allocations; one primarily for funding part one of the Agreement. Second, the unallocated balance in the appropriation legislation was given to the Board to distribute in its discretion. There was no mandate that the Board fully fund the Worcester County Agreement before it disbursed monies to other counties. Third, since the disputed funds have been distributed, the issue in this case is moot. In addition, because the question presented is not capable of repetition and the legislation will not effect the future conduct of the parties, judicial review is inappropriate. Lastly, since the Union’s claim is presumably premised on funding from a current or future Legislature, its claim is without relief.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants’ motion, treated as one for summary judgment, is ALLOWED and the plaintiffs motion for summary judgment is DENIED.[5]

The defendants have actually filed a motion to dismiss and alternatively a motion for summary judgment. Since defendants have filed an affidavit in support of their motion, I will treat it as one for summary judgment.

There is a dispute between the parties concerning the relevance and legal foundation for certain discussions between Union lobbyists and a certain state legislator and an assistant secretary of administration. The defendants argue that the unspecified statements of the legislator and the assistant secretary constitute hearsay and are not exceptions to the hearsay rule. Furthermore, the defendants contend that one cannot glean the Legislature’s intent in passing the subject appropriations bill, by accepting the view of private citizens and individual legislators.
The legislator, Senator Michael Morrisey of Quincy (“Morrissey”), states in his affidavit that the supplemental budget appropriation included the Worcester County Agreement. However, neither Morrisey’s affidavit nor the language of the appropriation law, indicate a legislative intent to Judy fund the Worcester County Agreement. See Shabshelowitz v. Fall River Gas Co., 412 Mass. 259, 263 (1992); see also, Administrative Justice of the Housing CourtDepartment v. Commissioner of Administration, 391 Mass. 198, 205 (1984) (courts have consistently confined their review of legislative intent to statutory words and official legislative records). Therefore, since these facts are not material to the decision in this case, I will not relate them in the background section of the opinion.

The Sheriff of Worcester County requested $900,000 to cover wage increases for fiscal years 1993 and 1994 as reflected in part one of the Agreement between the Union and the County.

The Board has also filed a motion to strike certain portions of the affidavits of Uhion lobbyists David Holway and Raymond McGrath, and Union President Kenneth T. Lyons, submitted in support of the plaintiffs motion for summary judgment. Since my order on summary judgment is in favor of the Board, ruling on this motion serves no purpose.